WENDY H. ALLEN, Employee, Plaintiff v. K-MART, Employer; SELF-INSURED (KM Administrative Services), Carrier, Defendants

No. COA99-48

(Filed 4 April 2000)

**Workers' Compensation— witnesses—right to cross-examine**

The Industrial Commission abused its discretion in a workers' compensation action by allowing significant new evidence to be admitted from physicians but denying defendants the opportunity to depose or cross-examine the physicians or requiring plaintiff to be examined by defendant's experts. Where the Commission allows a party to introduce new evidence which becomes the basis for its opinion and award, it must allow the other party the opportunity to rebut or discredit that evidence.

Appeal by defendants from an opinion and award for the Full Commission by Commissioner Christopher Scott filed 24 September 1998 and of the amended opinion and award for the Full Commission by Commissioner Christopher Scott filed 23 October 1998. Heard in the Court of Appeals 19 October 1999.

*Law Offices of George W. Lennon, by George W. Lennon and Michael W. Ballance, for plaintiff-appellee.*

*Cranfill, Sumner & Hartzog, L.L.P., by Patrick H. Flanagan, for defendant-appellants.*

HUNTER, Judge.

K-Mart and KM Administrative Services (collectively "defendants") appeal from an amended opinion and award of the North Carolina Industrial Commission ("Commission"), awarding Wendy H. Allen ("plaintiff") workers' compensation benefits for her fibromyalgia. Because we conclude that the Commission denied defendants their right to cross-examine plaintiff's independent medical examiners upon which the Commission based its decision and denied defendants an opportunity to be heard by the Commission with regard to those examiners' reports, we hold that the Commission manifestly abused its discretion with regard to admitting those reports into evidence. Therefore, we reverse and remand.

Plaintiff began working as a night stocker for K-Mart on 27 March 1995. On 30 May 1995, plaintiff sustained a compensable workers'

compensation injury when she lifted a box of stationery to put into a shopping cart and pulled a muscle in her left side. Several days later pursuant to defendants' safety coordinator's urging, plaintiff went to Urgent Care to see a doctor who diagnosed plaintiff as having a left shoulder strain. The doctor prescribed muscle relaxers and immobilized plaintiff's arm in a sling. He further took plaintiff out of work for four days and sent her to physical therapy. After several days, the doctor released plaintiff to go back to work with light duty restrictions of no lifting, pushing, or pulling. Plaintiff returned to work on 20 June 1995 as a telephone operator to comply with her light duty restrictions. In her new position, plaintiff worked various shifts as she was filling in for other employees when they were away from work.

As a result of plaintiff's subjective complaints of pain, defendants sent plaintiff to see Dr. Whitehurst, an orthopedic surgeon. Dr. Whitehurst stated that plaintiff's clinical findings could not be explained on a physiological basis. On 6 July 1995, Dr. Whitehurst released plaintiff to return to work without any restrictions, stating that he "would project that she would be considered to have reached her maximum medical improvement in 10-14 days." He further stated that he did "not project any permanent partial impairment rating."

Defendants offered plaintiff her night stocker's position; however, plaintiff declined, requesting instead to be moved to a day shift. Because there was no day stocker position available, plaintiff was assigned and accepted a customer specialist position. Because of the shift change, plaintiff's pay was reduced. During her trial return to work, plaintiff never mentioned having any difficulty doing any of the work assigned her. In fact, plaintiff performed all of her assigned job duties upon returning to work.

Plaintiff continued to work through the summer, until she had a disagreement with personnel officer, Ms. Strickland. Although plaintiff never reported the argument to anyone in her employer's company, plaintiff never returned to work after 30 August 1995. In her briefs to the Commission and to this Court, plaintiff cites her disagreement with Ms. Strickland as the reason—stating that she believed Ms. Strickland "fired" her. However, plaintiff concedes that no words to that effect were ever spoken. One week later, pursuant to company policy, K-Mart fired plaintiff for "fail[ing] to show up for work or call in."

After more than two months from the time she last saw Dr. Whitehurst on 6 July, and without expressing further complaint to defendants, plaintiff began seeing a family physician ("Dr. Miller") on 22 September 1995, complaining of back pain. Plaintiff did not seek authorization from either defendants or the Commission. Initially, Dr. Miller diagnosed plaintiff as having a "cervical muscle strain, lumbar muscle strain." She further noted that plaintiff had been depressed and suffering from anxiety/panic attacks for more than one and one-half years. Although Dr. Miller did not contact plaintiff's previous physician to obtain plaintiff's medical history, Dr. Miller continued prescribing the same medication for plaintiff's emotional problems that plaintiff had been taking during that period of time. On 28 September 1995, plaintiff returned to Dr. Whitehurst demanding testing which Dr. Whitehurst believed to be unnecessary. Nevertheless, upon plaintiff's insistence, Dr. Whitehurst conducted an MRI of plaintiff's back and an EMG and nerve conduction studies on her left arm. All tests on plaintiff returned with normal results.

Dr. Miller, upon receiving plaintiff's test results, forwarded the MRI results to a Duke Hospital neuroradiologist for interpretation. He, too, determined that the MRI was normal. Nonetheless, Dr. Miller referred plaintiff to Dr. Ezzeddine, a radiologist at Duke for further examination. He conducted another MRI and EMG on plaintiff, both of which again returned with normal results. Dr. Ezzeddine "noted that plaintiff had a physical exam displaying hysterical tendencies and that the likelihood of a neuropathy [that is, any disease of the nerves] or a radiculopathy [any diseased condition of roots of spinal nerves] accounting for her symptoms was quite slim." Finally, Dr. Miller diagnosed plaintiff with fibromyalgia "sort of by exclusion because all of the other tests . . . looked pretty normal." However, prior to the hearing before the deputy commissioner, plaintiff never sought out a specialist familiar with fibromyalgia.

Deputy Commissioner John Hedrick made his findings and set out an opinion and award filed 22 July 1997, denying plaintiff any further workers' compensation, finding that "[a]s of 30 August 1995, plaintiff was no longer disabled as a result of her injury on 30 May 1995 [and awarding plaintiff] payment of all medical expenses incurred as a result of her musculoskeletal strain on 30 May 1995, but . . . not . . . for treatment of fibromyalgia. . . ."

On 31 July 1997, plaintiff filed her notice of appeal to the Full Commission. Five months later on 29 December 1997, plaintiff

ALLEN v. K-MART

[137 N.C. App. 298 (2000)]

filed a motion for independent psychiatric and fibromyalgia specialist examinations. On 12 January 1998, defendants filed their brief to the Full Commission and included their first objection to plaintiff's request, stating:

> To allow the plaintiff to submit additional evidence at this late date would essentially allow the plaintiff to re-litigate this claim after a decision has been rendered and would require a whole new hearing in order to obtain additional lay witness evidence, *depositions* of the new physicians, contentions and then possible appeals.

(Emphasis added). Further, if plaintiff's request was allowed, defendants requested in the alternative that plaintiff be required to submit to an independent medical examination by a physician of defendants' choosing. The matter was heard by the Full Commission on 26 January 1998. By interlocutory order, the Full Commission allowed plaintiff sixty days from 3 February 1998 to obtain psychiatric and rheumatology expert opinions. It never addressed defendants' objection. On 10 February 1998, defendants requested clarification of the order from the Commission, specifically as to whether the physicians plaintiff was to see would be chosen by mutual agreement and again requesting that afterward, plaintiff be required to submit to "an independent medical examination by a qualified rheumatologist and/or psychiatrist of defendants['] choosing." Based on the record, that request also went without response.

On 6 April 1998 (sixty-three days after the order allowing plaintiff a sixty-day extension of time), plaintiff requested another sixty-day extension claiming that she had been unable to find a rheumatologist willing to accept a workers' compensation patient and that she had a psychiatric evaluation set up for 1 May 1998. Commissioner Scott extended plaintiff's time to file medical reports on or before 8 June 1998. Plaintiff submitted a psychiatric report by Dr. Margaret Dorfman on 26 May and at the same time requested the Commission to allow her to see Dr. Alan Spanos, "a general practitioner with experience in the diagnosis and treatment of fibromyalgia," instead of seeing a rheumatologist. Plaintiff stated the reason being that no rheumatologist would take her case for fear of not being paid. Plaintiff did not request the Commission's assurance of payment to any rheumatologist. However, she did request the Commission assure Dr. Spanos "that payment would be forthcoming immediately after approval from the Industrial Commission." Defendants objected (for a third time) stating that

the original basis for plaintiff's motion for an I.M.E. with a rheumatologist was Dr. Miller's testimony in her deposition that a <u>rheumatologist</u> would be in a better position to make a diagnosis of fibromyalgia and testify regarding the causation issue. If plaintiff now wishes to see a physician other than a rheumatologist, then her original basis for her motion for an IME is not substantiated by any evidence whatsoever.

Without ruling on defendants' objection, Commissioner Scott allowed plaintiff's request in his order of 4 June 1998. Dr. Spanos' report was submitted to the Commission on 16 July 1998.

On 22 September 1998, defendants filed with the Commission a fourth objection to plaintiff's independent medical examinations. Again, the Commission did not respond to defendants' objection. On 24 September 1998, the Full Commission issued its opinion and award for plaintiff, finding in pertinent part that:

28. Plaintiff's fibromyalgia, related pain syndromes and her musculoskeletal and neuropathic disfunctions as diagnosed by Dr. Spanos, were caused or significantly aggravated by her injury by accident on 30 May 1995.

29. Plaintiff's psychiatric problems, panic attacks and depression as diagnosed by Dr. Dorfman, were caused or significantly aggravated by her injury by accident on 30 May 1995.

Defendants have preserved six assignments of error. However, because we are remanding this case to the Commission for further action consistent with this opinion, we choose to address only one. Defendants assign error to the Commission's use of discretion in allowing and considering the independent medical examinations of Drs. Dorfman and Spanos as evidence, without permitting defendants to depose or cross-examine either physician or requiring plaintiff to submit to an independent medical examination by a physician of defendants' choosing. Defendants contend the Commission abused its discretion, committing reversible error. We agree. Defendants should have been allowed the opportunity to discredit the doctors' reports.

In the record, we find that defendants filed five separate objections to the Commission's allowance of the independent medical examinations (12 January 1998, 2 June 1998, 12 August 1998, 22 September 1998, and 9 October 1998), one request to depose the new physicians (9 October 1998)—aside from having argued the need for

the physicians' depositions in their brief to the Full Commission filed on 12 January 1998, and six requests to have plaintiff submit to an independent medical examination by a physician of defendants' choosing (12 January 1998, 10 February 1998, 2 June 1998, 12 August 1998, 22 September 1998, and 9 October 1998). Case law establishes that, in this regard, the Commission is governed by "general rules of practice . . . . [And it], in turn, must formally enter [its] ruling[s] into the record *before* making the award." *Ballenger v. Burris Industries,* 66 N.C. App. 556, 562, 311 S.E.2d 881, 885 (1984) (emphasis added). However, from the record, the Commission responded to none of defendants' objections or requests. Only in its amended opinion and award filed 23 October 1998, addressing defendants' "Motion for Reconsideration" filed after the Commission had already issued its opinion and award in plaintiff's favor, did the Commission finally deny "defendant[s'] requests that it be allowed to obtain the deposition testimony of Dr. Dorfman and Dr. Spanos and that plaintiff be ordered to submit to an independent medical examination by a rheumatologist and psychiatrist of its choosing." We note that in its ruling, the Commission never states that defendants' requests, motions or objections were not timely made, thus they were properly before the Commission. The failure of the Commission to timely address defendants' pending requests, motions and objections without a doubt prejudiced the defendants in that they had no reason to seek other means by which they could protect their interests. The Commission's untimely ruling of 23 October 1998 left defendants without the option of fervently seeking from the Commission its permission to depose the physicians, effectively denying them due process because they lacked the opportunity to discredit the evidence submitted by Drs. Spanos and Dorfman.

Our courts have long held that "[s]trictly speaking, the rules of evidence applicable in our general courts do not govern the Commission's own administrative fact-finding. . . ." However, the Commission must "conform to court procedure [where] required by statute or to preserve justice and due process." *Haponski v. Constructor's Inc.,* 87 N.C. App. 95, 97, 360 S.E.2d 109, 110 (1987) (citations omitted). It has long been the law in North Carolina that:

> a party to an action or proceeding, either civil or criminal, may elicit from an opposing witness on cross-examination particular facts having a logical tendency to show that the witness is biased against him or his cause, or that the witness is interested adversely to him in the outcome of the litigation.

*State ex rel. Everett v. Hardy,* 65 N.C. App. 350, 352, 309 S.E.2d 280, 282 (1983) (*quoting State v. Hart,* 239 N.C. 709, 711, 80 S.E.2d 901, 903 (1954). Furthermore,

> Cross-examination of an opposing witness for the purpose of showing his bias or interest is a substantial legal right, which the trial judge can neither abrogate nor abridge to the prejudice of the cross-examining party.

*Hart* at 711, 80 S.E.2d at 903. *See also Warren v. Jackson,* 125 N.C. App. 96, 101, 479 S.E.2d 278, 281 (1997). The evidence offered by Drs. Spanos and Dorfman was completely different from any other evidence admitted up to then. Therefore, upon its admittance of the reports, the Commission necessarily should have allowed defendants the opportunity to "attack the probative value of [the] opinion testimony . . . ." *Thompson v. Lenoir Transfer Co.,* 72 N.C. App. 348, 350, 324 S.E.2d 619, 621 (1985).

The opportunity to be heard and the right to cross-examine another party's witnesses are tantamount to due process and basic to our justice system. We agree with defendants that the Commission manifestly abused its discretion by allowing significant new evidence to be admitted but denying defendants the opportunity to depose or cross-examine the physicians, or requiring plaintiff to be examined by experts chosen by defendants. Therefore, we hold that where the Commission allows a party to introduce new evidence which becomes the basis for its opinion and award, it must allow the other party the opportunity to rebut or discredit that evidence.

We, therefore, reverse and remand to the Full Commission to act in accordance with this opinion.

Reversed and remanded.

Judges GREENE and WALKER concur.