RICKY B. HANDY, Employee, Plaintiff v. PPG INDUSTRIES, Employer, Self-Insured and KEY RISK MANAGEMENT SERVICES, Servicing Agent, Defendants

No. COA01-1447

(Filed 3 December 2002)

**1. Workers' Compensation— basis for recovery—injury by accident—occupational disease—election of theory not required**

The Industrial Commission did not err in a workers' compensation case by determining a deputy commissioner did not violate defendants' due process or equal protection rights by allegedly becoming an advocate for plaintiff and abandoning her role as an impartial factfinder and decisionmaker when she changed plaintiff employee's theory of recovery ex mero motu from injury by accident to occupational disease, because: (1) there is nothing in the record on appeal to indicate plaintiff elected at any time to proceed solely on the theory of injury by accident to the exclusion of an occupational disease theory; (2) defendants failed to identify any statute or Industrial Commission rule requiring a workers' compensation claimant to choose between injury by accident and occupational disease as a basis for recovery; and (3) plaintiff was not required to make an election of theories.

**2. Workers' Compensation— deputy commissioner ordering deposition of witness—due process**

The Industrial Commission did not err in a workers' compensation case by determining the deputy commissioner did not violate defendants' due process or equal protection rights by ordering ex mero motu that plaintiff's physician who was not

HANDY v. PPG INDUS.

[154 N.C. App. 311 (2002)]

present at the hearing be asked questions, because: (1) the deputy commissioner originally intended for written questions to be submitted to the doctor and it was defendants who then requested a deposition; and (2) the subsequent ordering of the doctor's deposition did not indicate a disqualifying personal bias on her part or deprive defendants of an impartial decisionmaker in violation of due process.

**3. Workers' Compensation— deputy commissioner's formulation of questions and hypothetical—due process**

The Industrial Commission did not err in a workers' compensation case by determining the deputy commissioner did not violate defendants' due process rights by formulating questions and an essential factual hypothetical to be submitted to plaintiff's physician at a deposition, because: (1) the deputy commissioner, who was not present at the deposition, did not comment on the strength of the evidence or the credibility of the witness; (2) the fact that the physician's answers were dispositive of an essential issue does not constitute error; and (3) the questions presented by the deputy commissioner were neutral which could benefit either plaintiff or defendants depending upon the answer.

**4. Workers' Compensation— deputy commissioner's formulation of questions and hypothetical—equal protection**

The Industrial Commission did not err in a workers' compensation case by determining the deputy commissioner did not violate defendants' equal protection rights by allegedly assisting plaintiff employee with his claim in a compensation hearing in violation of N.C.G.S. § 97-79(f) based on the deputy commissioner's action in preparing and submitting questions to plaintiff's physician, because: (1) the questions did not convey or express an opinion with respect to an essential element of plaintiff's claim or the credibility of plaintiff's doctor as a witness; and (2) the questions did not indicate a disqualifying personal bias or predisposition on the part of the deputy commissioner when the questions were neutral and could have benefitted either party.

Appeal by defendants from opinion and award entered 26 June 2001 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 September 2002.

*No brief for pro se plaintiff-appellee.*

*Womble Carlyle Sandridge & Rice, PLLC, by Phillip Mohr, for defendant-appellants.*

THOMAS, Judge.

Defendants, PPG Industries and Key Risk Management Services, appeal from an opinion and award of the North Carolina Industrial Commission in favor of plaintiff, Ricky B. Handy.

They contend the Commission erred in determining the Deputy Commissioner did not violate their due process or equal protection rights by (1) changing plaintiff's theory of recovery *ex mero motu* from injury by accident to occupational disease; (2) ordering *ex mero motu* that a physician not present at the hearing be asked questions; (3) formulating questions and an essential factual hypothetical to be submitted to the physician; and (4) in sum, assisting plaintiff with his claim.

The Commission, based in part on the deposition testimony of the physician ordered to testify by the Deputy Commissioner, allowed plaintiff's claim and ordered defendants to pay all resulting medical expenses. Based on the reasons herein, we affirm the opinion and award of the Commission.

At the outset, we note plaintiff appeared *pro se* before the Deputy Commissioner and the Full Commission, and did not file a brief on appeal.

The facts are as follows: Plaintiff began working for defendant-employer PPG in April 1994. During most of his employment, plaintiff was a twist machine operator (TMO) in the manufacturing of yarn.

His job consisted of three primary tasks. First, he was required to doff his machine, which involved removing up to eighty bobbins weighing between two and thirty-five pounds from the frame of the machine and placing them on a pin truck. Doffing was not required on most days, however.

Plaintiff's second task was cleaning the machine. Approximately twelve times per shift, he used long brushes to clean the inside of the frame of the machine, and used steel wool and chemical towels to clean the other parts.

Plaintiff's third and perhaps most important task was called the wrap-in procedure. His twist machine contained large spools of fiber-

glass thread, referred to as packages, which were located at two different levels, six-and-a-half and seven feet off the ground. There were forty spools on each level. A certain length of thread was required to hang from a package to allow plaintiff to thread the machine and attach the thread to a bobbin. The machine was supposed to automatically release the appropriate amount of thread, but, in July 1997, it began to malfunction. As a result, plaintiff often had to reach up and turn each package six or seven times, overcoming the resistance in the packages in order to release the thread. Plaintiff is five feet six-and-a-half inches in height, which meant he often had to stand on his toes and reach over his head to turn the packages.

Once the machine was fully threaded, plaintiff would then monitor it to make sure the spindles were running. He would also sweep the area around the machine.

Additionally, the evidence indicates plaintiff was a regular weightlifter from 1991 until early 1998, but, thereafter, he lifted weights at a reduced level and stopped doing certain exercises.

In November 1997, plaintiff began experiencing pain in his left shoulder when he reached to turn the packages. He also experienced the pain at night while not at work. Occasionally he awakened with numbness in his left arm. He finally saw a physician's assistant about his shoulder pain in late January 1998. The physician's assistant noted that plaintiff complained of increased pain when lifting weights and experienced improvement when he avoided lifting them. Plaintiff was advised to take anti-inflammatory medication and stop weightlifting.

On 10 February 1998, plaintiff saw Dr. Richard Worf, his family doctor, and reported continuing shoulder pain.

On 25 February 1998, as he was turning one of the packages at work, plaintiff experienced a sharp pain in his left shoulder. He was treated by the company nurse with heat and ice. On 5 March 1998, plaintiff saw Dr. Chris Christakos and reported shoulder problems associated with overhead activity at work as well as weightlifting. Christakos diagnosed plaintiff as suffering from left shoulder impingement syndrome and prescribed medication and rest. Nevertheless, plaintiff's symptoms persisted with only slight improvement.

On 24 March 1998, Christakos gave plaintiff a steroid injection in his left shoulder and referred him to physical therapy. Plaintiff con-

tinued to see Christakos over the next six months. Despite shoulder pain, plaintiff remained at PPG in a light duty position.

Christakos eventually referred plaintiff to Dr. Gregory Holthusen, an orthopaedic surgeon, who examined him on 28 October 1998. Holthusen was advised that plaintiff had suffered shoulder pain for over a year. Plaintiff also reported his shoulder had been treated with a cortisone injection and physical therapy but the pain persisted. He described his overhead lifting at work and weightlifting. Holthusen diagnosed plaintiff as suffering from "rotator cuff tendinitis secondary to subacromial impingement." Plaintiff was treated with an injection to the subacromial space and his work restrictions were continued for two weeks.

On 3 February 1999, plaintiff again saw Holthusen and reported increased symptoms associated with repeated overhead reaching. Plaintiff was advised not to perform activities above shoulder level.

Despite plaintiff's shoulder problems, he neither missed time at work nor sustained a reduction in wages.

On 11 August 1998, plaintiff filed a Form 33 request for hearing in which he contended he suffered a left shoulder injury on 25 February 1998. Defendants responded by denying plaintiff suffered an injury by accident or an occupational disease.

Plaintiff's claim was heard by Deputy Commissioner Morgan Chapman on 10 February 1999. Plaintiff appeared *pro se* and testified on his own behalf. He failed to present any additional witnesses and failed to present any medical testimony on the issue of causation. Diane Swicegood, plant nurse at PPG, testified for defendants, who were represented by counsel. Plaintiff's answers to interrogatories, his employee health record, and an employee incident report were admitted into evidence.

Following the hearing, the Deputy Commissioner held the record open on her own motion for the receipt of medical records. She explained she would treat the claim as one for an occupational disease and would permit the parties to submit written questions to be mailed to Dr. Holthusen. The parties' written questions would be added to questions she herself intended to prepare.

Defendants requested that Holthusen's testimony be taken by deposition. The Deputy Commissioner granted defendants' request. She ordered her factual hypothetical and follow-up questions be sub-

mitted first and only then would defendants be allowed to cross-examine Holthusen.

In compliance with the Deputy Commissioner's order, Holthusen's deposition was taken on 1 December 1999. Although he received notice, plaintiff did not appear at the deposition or submit questions. Defense counsel began the deposition by reading the Deputy Commissioner's factual hypothetical and asking the Deputy Commissioner's prepared questions. Defense counsel entered an objection on the record. In response to the Deputy Commissioner's hypothetical and follow-up questions, Holthusen testified that plaintiff's job duties (1) placed him at risk of developing shoulder tendinitis and (2) contributed to his development of tendinitis. Defense counsel then proceeded with a lengthy cross-examination of Holthusen covering approximately thirty-one pages of transcript.

On 11 June 2000, the Deputy Commissioner entered an opinion and award. She found plaintiff had not suffered an injury by accident and concluded his shoulder tendinitis was an occupational disease. She ordered defendants to pay all resulting medical expenses, past and future. Defendants appealed to the Full Commission. The Full Commission affirmed and defendants now appeal to this Court.

The basis of defendants' appeal is their contention that the Full Commission erred in determining the Deputy Commissioner had not become an advocate for plaintiff, thus abandoning her role as an impartial fact finder and decision maker.

The courts of this State have long held that the rules of procedure and evidence applicable in our general courts do not govern the Industrial Commission's administrative fact-finding function. *See Maley v. Furniture Co.*, 214 N.C. 589, 200 S.E. 438 (1939); *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 535 S.E.2d 602 (2000); *Allen v. K-Mart*, 137 N.C. App. 298, 528 S.E.2d 60 (2000); *Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 360 S.E.2d 109 (1987). In fact, the Workers' Compensation Act (Act) mandates that the processes, procedures, and discovery under the Act "shall be as summary and simple as reasonably may be." N.C. Gen. Stat. § 97-80(a) (2001). The Commission is empowered to make rules for carrying out the provisions of the Act consistent with this stated purpose. *Id.* Members of the Commission, as well as deputy commissioners, are empowered to take evidence and enter orders, opinions, and awards. N.C. Gen. Stat. § 97-79(b) (2001).

In interpreting an earlier version of the Act in *Maley*, our Supreme Court stated:

> The Industrial Commission is an administrative board, with *quasi*-judicial functions. The manner in which it transacts its business is a proper subject of statutory regulation and need not necessarily conform to court procedure except where the statute so requires, or where, in harmony with the statute, or where it fails to speak, the Court of last resort, in order to preserve the essentials of justice and the principles of due process of law, shall consider rules similar to those observed in strictly judicial investigations in courts of law to be indispensable or proper.

*Maley*, 214 N.C at 594, 200 S.E. at 441 (emphasis in original). In accord with the Supreme Court's view in *Maley*, this Court has consistently held that the Commission must conform to court procedure and evidentiary rules where required to preserve justice and due process. *See Goff*, 140 N.C. App. at 134-35, 535 S.E.2d at 605-06 (holding the Commission erred by allowing the plaintiff to admit a new doctor's report without allowing the opposing parties an opportunity to cross-examine the doctor); *Allen*, 137 N.C. App. at 304, 528 S.E.2d at 64-65 (holding the Commission erred by allowing significant new evidence from physicians to be admitted while denying the defendants the opportunity to depose or cross-examine the physicians or requiring the plaintiff to be examined by experts chosen by the defendants); *Matthews v. Charlotte-Mecklenburg Hosp. Auth.*, 132 N.C. App. 11, 21, 510 S.E.2d 388, 395 (1999) (holding the Commission erred by not allowing the defendant to present evidence in a hearing in which the defendant had the burden of proof).

"Whenever a governmental tribunal . . . considers a case in which it may deprive a person of life, liberty or property, it is fundamental to the concept of due process that the deliberative body give that person's case fair and open-minded consideration." *Crump v. Bd. of Education*, 326 N.C. 603, 613, 392 S.E.2d 579, 584 (1990). Essential to due process is a fair trial in a fair tribunal with an unbiased, impartial decision maker. *Id.* at 613-15, 392 S.E.2d at 584-85. To make out a due process claim based on this theory, the complaining party must show the decision maker possesses a disqualifying personal bias. *Leiphart v. N.C. School of the Arts*, 80 N.C. App. 339, 354, 342 S.E.2d 914, 924 (1986). "Bias has been defined as 'a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction[.]' " *Crump*, 326 N.C. at 615, 392 S.E.2d at 585 (quoting Black's Law Dictionary 147 (5th ed. 1979)).

**[1]** Defendants first contend the Deputy Commissioner violated their due process rights by changing plaintiff's theory of recovery. However, there is nothing in the record on appeal to indicate plaintiff elected at any time to proceed solely on the theory of injury by accident to the exclusion of an occupational disease theory. Further, defendants have failed to identify any statute or Industrial Commission rule requiring a workers' compensation claimant to choose between injury by accident and occupational disease as a basis for recovery. N.C. Gen. Stat. § 97-52 (2001) states that an injury resulting from an occupational disease "shall be treated as the happening of an injury by accident within the meaning of the North Carolina Workers' Compensation Act." We conclude plaintiff was not required to make an election and thus the Deputy Commissioner's decision to treat his claim as one based on an occupational disease did not violate defendants' due process rights.

**[2]** We likewise disagree with defendants' next contention that their due process rights were violated by the Deputy Commissioner's decision to order the testimony of Holthusen. The Commission, as well as deputy commissioners, are statutorily empowered to order testimony be taken by deposition. N.C.G.S. § 97-80(d); N.C.G.S. § 97-79(b) (granting deputy commissioners the same powers as members of the Commission under N.C.G.S. § 97-80). Further, Industrial Commission Rule 612 allows a commissioner or deputy commissioner to order the deposition of a witness following a hearing when additional testimony from the witness is necessary to the disposition of the case. 4 NCAC 10A.0612(a) (2001). The courts of this State are also permitted to call witnesses to testify, with or without a request from a party. N.C.R. Evid. 614(a) (2001). Here, the Deputy Commissioner originally intended for written questions to be submitted to Holthusen. It was defendants who then requested a deposition. The subsequent ordering of Holthusen's deposition did not indicate a disqualifying personal bias on her part or deprive defendants of an impartial decision maker in violation of due process.

**[3]** Defendants argue the Deputy Commissioner continued her role as advocate for plaintiff in violation of their due process rights by preparing the factual hypothetical and follow-up questions for Holthusen. They claim those questions went beyond clarifying Holthusen's testimony and instead sought to elicit new testimony necessary to satisfy plaintiff's burden of proof.

N.C.R. Evid. 614(b) (2001) specifically allows the trial court to "interrogate witnesses, whether called by itself or by a party." Such

interrogation, in the exercise of the trial court's duty to supervise and control the course of a trial, has consistently been allowed for the purpose of clarifying contradictory or confusing testimony. *See State v. Ramey*, 318 N.C. 457, 464, 349 S.E.2d 566, 571 (1986); *State v. Whittington*, 318 N.C. 114, 125, 347 S.E.2d 403, 409 (1986); *State v. Hill*, 105 N.C. App. 489, 494, 414 S.E.2d 73, 77 (1992); *State v. Chandler*, 100 N.C. App. 706, 710, 398 S.E.2d 337, 339 (1990). In interrogating a witness, the court may not intimate an opinion as to the witness's credibility, *State v. Long*, 113 N.C. App. 765, 771, 440 S.E.2d 576, 579 (1994), or express an opinion as to whether any essential fact has been proved. *State v. Lowe*, 60 N.C. App. 549, 552, 299 S.E.2d 466, 468 (1983). However, a trial court may ask questions that elicit testimony which proves an element of the case so long as the court does not comment on the strength of the evidence or the credibility of the witness. *State v. Smarr*, 146 N.C. App. 44, 52-53, 551 S.E.2d 881, 886 (2001), *disc. review denied*, 355 N.C. 291, 561 S.E.2d 500 (2002); *Lowe*, 60 N.C. App. at 552, 299 S.E.2d at 468. The submission of the questions "must be conducted with care and in a manner which avoids prejudice to either party." *Chandler*, 100 N.C. App. at 710, 398 S.E.2d at 339 (citing *State v. Colson*, 274 N.C. 295, 163 S.E.2d 376 (1968)).

Here, plaintiff appeared *pro se* before the Deputy Commissioner, while defendants were represented by counsel. At the conclusion of the hearing, the Deputy Commissioner developed a factual hypothetical and four questions to be read to plaintiff's physician. Defendants were again represented by counsel at the deposition. Defense counsel read the prepared hypothetical and four questions to plaintiff's physician.

Following the physician's answers, defendants proceeded with their cross-examination. The Deputy Commissioner, who was not present at the deposition, did not comment on the strength of the evidence or the credibility of the witness. The fact that Holthusen's answers were dispositive of an essential issue does not constitute error. *See Smarr*, 146 N.C. App. at 52-53, 551 S.E.2d at 886. The questions presented by the Deputy Commissioner were neutral, which, depending upon the answer, could benefit either plaintiff or defendants. *See Lowe*, 60 N.C. App. at 552, 299 S.E.2d at 468 (finding no error in trial court's questions to a witness; the witness's responses were the only evidence as to the value of a television set in a felony larceny case).

"This Court will not interfere with the trial court's exercise of its duty to control the conduct and course of the trial absent a showing of manifest abuse." *Long*, 113 N.C. App. at 771, 440 S.E.2d at 580. Defendants advance no plausible argument why the Commission, and in turn deputy commissioners, should not hold the same power to interrogate witnesses when performing their administrative fact-finding function. The Deputy Commissioner's questions to Holthusen do not indicate a disqualifying personal bias on her part. Thus, there was no violation of defendants' due process right to a fair trial and impartial decision maker. The Deputy Commissioner did not abuse her discretion in submitting the hypothetical and follow-up questions to Holthusen.

[4] Defendants next contend "the Deputy Commissioner's actions violated the statutory prohibition against the Industrial Commissioner representing a claimant in a compensation hearing." Again, we disagree.

N.C. Gen. Stat. § 97-79(f) (2001) states:

The Commission shall create an ombudsman program to assist unrepresented claimants, employers, and other parties, to enable them to protect their rights under this Article. In addition to other duties assigned by the Commission, the ombudsman shall meet with, or otherwise provide information to, injured employees, investigate complaints, and communicate with employers' insurance carriers and physicians at the request of the claimant. Assistance provided under this subsection shall not include representing the claimant in a compensation hearing.

Here, the record does not indicate that a N.C.G.S. § 97-79(f) ombudsman was involved in assisting plaintiff. Since the Deputy Commissioner acted within her discretion in preparing and submitting the questions to plaintiff's physician, these actions do not amount to "representing the claimant in a compensation hearing." *Id.*

Defendants' final contention is that the Deputy Commissioner's actions violated their equal protection rights under the North Carolina Constitution and the United States Constitution. They claim she violated the statutory prohibition against the Commission representing a claimant and that no rational basis exists for her actions. We disagree.

The questions submitted by the Deputy Commissioner did not convey or express an opinion with respect to an essential element of

plaintiff's claim or the credibility of Holthusen as a witness. The questions did not indicate a disqualifying personal bias or predisposition on the part of the Deputy Commissioner. As noted, the questions were neutral and could have benefitted either party. Accordingly, the actions of the Deputy Commissioner did not violate N.C.G.S. § 97-79(f) and did not constitute representing plaintiff at the hearing. She acted within her discretion in preparing and submitting the questions to Holthusen. Defendants' equal protection rights were thus not violated.

We find no constitutional or statutory infirmity in the actions taken by the Deputy Commissioner in the instant case. However, it is important to stress that the Commission or a deputy commissioner, as well as a trial court, should be resolutely careful in calling and interrogating witnesses. Not only should there be no prejudice to a party, but there also should be no reasonable perception of prejudice. Neutrality and the appearance of neutrality are equally critical in maintaining the integrity of our judicial and quasi-judicial processes.

For the reasons stated herein, we affirm the opinion and award of the Industrial Commission.

Affirmed.

Chief Judge EAGLES and Judge MARTIN concur.