NO. COA13-413

NORTH CAROLINA COURT OF APPEALS

Filed:  6 May 2014

MARK WILLARD,
    Deceased-Employee,
    Plaintiff,

v.

VP BUILDERS INC.,
    Employer,
    Self-Insured,

    and

SEDGWICK CMS,
    Third-Party Administrator,
    Defendants.

North Carolina
Industrial Commission
I.C. No. 99027

Appeal by defendants from opinion and award entered 18 December 2012 and order entered 29 January 2013 by the North Carolina Industrial Commission.  Heard in the Court of Appeals 12 September 2013.

*Oxner Thomas + Permar, by Kristin P. Henriksen, for plaintiff-appellee.*

*Teague Campbell Dennis & Gorham, L.L.P., by George H. Pender, Megan B. Baldwin, and Brian M. Love, for defendants-appellants.*

DAVIS, Judge.

VP Builders, Inc. and its third-party administrator Sedgwick CMS (collectively "Defendants") appeal from the opinion and award of the North Carolina Industrial Commission awarding death benefits to Connie Willard ("Ms. Willard"), the widow of Mark Willard ("Plaintiff"), and the Commission's subsequent order denying Defendants' motion for reconsideration. After careful review, we affirm.

## Factual Background

On 24 September 2008, Plaintiff suffered an admittedly compensable injury to his left hand. Plaintiff was examined by Dr. Andrew Koman ("Dr. Koman") and diagnosed with post-trauma complex regional pain syndrome and a crush injury involving the left thumb. Dr. Koman performed surgery on Plaintiff's left hand on 2 June 2009. Dr. Koman's physician's assistant, Randy Parks ("Mr. Parks"), prescribed Vicodin to Plaintiff from 6 May 2009 to 20 July 2009 in order to manage his pain symptoms.

On 5 August 2009, Mr. Parks, pursuant to Dr. Koman's directive, prescribed methadone to Plaintiff. The prescription instructed Plaintiff to take ten milligrams, three times per day as needed to manage his pain. Plaintiff's medical records indicate that Dr. Koman intended "to transition [Plaintiff] from Vicodin to Methadone as part of the treatment plan to control

[Plaintiff's] pain." Plaintiff's medical treatment by Dr. Koman and Mr. Parks was authorized through his workers' compensation coverage and paid for by Defendants. Plaintiff was also receiving weekly disability compensation from Defendants as a result of his compensable injury.

On the morning of 6 August 2009, Ms. Willard drove Plaintiff to Dr. Koman's office and then to the Rite Aid Pharmacy to pick up and fill his methadone prescription. Plaintiff received 90 ten-milligram tablets of methadone from the pharmacist. Plaintiff took one of the pills during the car ride home from the pharmacy. Ms. Willard returned home with Plaintiff and then departed alone to visit her mother between 12:00 p.m. and 1:00 p.m.

While she was away, Ms. Willard spoke to Plaintiff twice on the telephone. When she called him at 1:15 p.m., Plaintiff "sounded fine." When Ms. Willard called the second time at approximately 3:00 p.m., he told her that he was doing some research on the computer regarding possible trips to take with their granddaughter. During this telephone conversation, Plaintiff stated that he had taken a second ten-milligram tablet of methadone. Ms. Willard stated that he was speaking at a lower volume and speed than usual.

At 3:30 p.m., Plaintiff received a phone call from his brother. Plaintiff's brother told Ms. Willard that Plaintiff's speech was very slow and that when he asked Plaintiff if he was okay, Plaintiff responded, "I don't know. . . . My throat feels funny."

Ms. Willard called Plaintiff at 4:00 p.m. to inform him that she was on her way home, and Plaintiff did not answer the telephone. As she approached their house, Ms. Willard saw Plaintiff through the window "slumped over the kitchen table." When she reached him, he was unresponsive. Emergency personnel arrived and confirmed that Plaintiff was dead.

On 27 July 2010, Ms. Willard filed a Form 18 seeking death benefits pursuant to N.C. Gen. Stat. § 97-38. In response, Defendants filed a Form 61, denying the claim on the basis that (1) Plaintiff's death "[was] not related to the compensable left thumb injury"; and (2) N.C. Gen. Stat. § 97-12 — which provides that compensation shall not be paid if the employee's injury or death was proximately caused by "[h]is being under the influence of any controlled substance listed in the North Carolina Controlled Substances Act, G.S. 90-86, et. seq., where such controlled substance was not prescribed by a practitioner" — barred any recovery of workers' compensation benefits.

The matter came on for hearing before Deputy Commissioner Phillip A. Holmes ("Deputy Commissioner Holmes") on 18 November 2011. Before the hearing commenced, the parties came to an agreement regarding the scheduling of certain medical depositions. The parties agreed that Dr. Andrew Mason ("Dr. Mason"), a toxicologist serving as an expert witness for Plaintiff, would be deposed after the parties conducted "some of the key depositions in this case, particularly the medical examiner's office witnesses," consisting of Dr. Deborah Radisch ("Dr. Radisch"), the Chief Medical Examiner of the North Carolina Office of the Chief Medical Examiner ("OCME"), and Dr. Ruth Winecker ("Dr. Winecker"), the Chief Toxicologist of the OCME. Pursuant to the agreement, if Dr. Mason's testimony "attack[ed] the toxicology report," then Defendants would have the opportunity to redepose Drs. Radisch and Winecker and, if necessary, designate and introduce testimony from a rebuttal toxicologist. This agreement was entered into to address Defendants' earlier contention that Dr. Mason's testimony should be excluded because Plaintiff had failed to promptly and fully disclose the substance of his opinions in various discovery responses.

Following the hearing, the parties took several medical depositions, including those of Drs. Radisch and Winecker (Defendants' witnesses) followed by the deposition of Plaintiff's expert witness, Dr. Mason. On 13 March 2012, Defendants filed a motion to extend the record, seeking to introduce into evidence rebuttal testimony from Dr. Winecker, Dr. Radisch, and Dr. Brian McMillen ("Dr. McMillen") — a toxicologist who was designated to serve as Defendants' rebuttal expert witness. Defendants' motion alleged that (1) Dr. Mason had offered deposition testimony that was "substantially different than what was represented in plaintiff's discovery responses"; and (2) because Dr. Mason's opinions were in conflict with those testified to by the OCME, Defendants were entitled to offer rebuttal testimony pursuant to the parties' pre-hearing agreement. Deputy Commissioner Holmes denied the motion that same day.

On 14 March 2012, Defendants filed a motion requesting the opportunity to make an offer of proof. Specifically, Defendants — incorporating by reference their 13 March 2012 motion to extend the record — sought to present the rebuttal deposition testimony of Drs. Winecker, Radisch, and McMillen as an offer of proof to preserve their challenge to Deputy Commissioner Holmes'

ruling for purposes of appellate review. Deputy Commissioner Holmes denied this motion on 15 March 2012. He subsequently entered an opinion and award on 26 April 2012 (1) concluding that Defendants had failed to prove their affirmative defense under N.C. Gen. Stat. § 97-12 because the evidence did not establish that Plaintiff took the methadone in a manner contrary to the prescribed use; and (2) awarding Ms. Willard death benefits for a minimum total of 400 weeks and ordering Defendants to reimburse her for funeral expenses and to pay the costs of this action, including expert witness fees.

Defendants appealed to the Full Commission and filed a motion to reopen the record to include rebuttal testimony from Drs. Winecker, Radisch, and McMillen. Defendants requested, in the alternative, that they be permitted to submit this deposition testimony as an offer of proof. The Full Commission concluded that Defendants "ha[d] not shown good grounds to receive further evidence" and issued an opinion and award on 18 December 2012 affirming, with some minor modifications, the opinion and award of Deputy Commissioner Holmes.

Defendants filed a motion for reconsideration on 18 January 2013, requesting that the Commission grant their earlier motion to reopen the record or, alternatively, allow them to make an

offer of proof. Defendants further asked the Commission to reconsider its opinion and award once the requested depositions had occurred, "taking into account this additional medical and toxicological evidence." On 29 January 2013, the Commission entered an order denying Defendants' motion for reconsideration, motion to reopen the record, and request for leave to make an offer of proof. Defendants appealed to this Court.

On 5 December 2013, this Court entered an order remanding this matter to the Commission for the sole purpose of allowing Defendants to make an offer of proof consisting of the anticipated rebuttal testimony of Drs. Winecker, Radisch, and McMillen. Defendants' appeal was held in abeyance pending this Court's receipt of the offer of proof. Defendants submitted their offer of proof to this Court on 17 February 2014.

## Analysis

### I. Offer of Proof

Defendants first contend that the Full Commission erred in failing to allow them the opportunity to make an offer of proof. We agree.

> The offer-of-proof requirement is imposed for the benefit of two different audiences. First, when the proponent makes the offer of proof, the trial [tribunal] may reconsider and change the ruling. . . . Second, the offer is also essential if there is an

> appeal. If there were no offer of proof, the appellate court would have a difficult time evaluating the propriety and effect of the trial [tribunal's] ruling. With an offer of proof in the trial record, the appellate court can make much more intelligent decisions as to whether there was error . . . [and] whether the error was prejudicial . . . .

Robert P. Mosteller et. al., *North Carolina Evidentiary Foundations* § 3-6, at 3-15 (2d. ed. 2006). An offer of proof is generally essential to appellate review of a lower court's decision to exclude evidence because "[a]bsent an adequate offer of proof, we can only speculate as to what a witness's testimony might have been." *State v. Jacobs*, 363 N.C. 815, 818, 689 S.E.2d 859, 861-62 (2010). As we recently explained,

> in order for a party to preserve for appellate review the exclusion of evidence, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record. The essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred.

*State v. Walston*, ___ N.C. App. ___, ___, 747 S.E.2d 720, 723-24 (2013) (internal citations, quotation marks, and alterations omitted), *disc. review denied*, ___ N.C. ___, 753 S.E.2d 667 (2014).

As set out above, Defendants sought to introduce rebuttal

deposition testimony from Drs. Winecker, Radisch, and McMillen and requested that Deputy Commissioner Holmes allow the rebuttal testimony to be included in the record. When Defendants' motion was denied, they sought leave to make an offer of proof with regard to this rebuttal testimony. This motion was also denied.

After Deputy Commissioner Holmes entered his opinion and award, Defendants appealed to the Full Commission and sought to reopen the record to include the rebuttal testimony. Defendants again requested, in the alternative, the opportunity to make an offer of proof regarding the rebuttal testimony. The Commission concluded that Defendants "ha[d] not shown good grounds to receive further evidence" and proceeded to enter its opinion and award without allowing Defendants to make an offer of proof.

Defendants then filed a motion for reconsideration, arguing that they had been prejudiced by Plaintiff's failure to fully disclose Dr. Mason's opinions in his discovery responses and by the Commission's denial of their request to reopen the record to receive the testimony of Dr. McMillen and the rebuttal testimony of Drs. Winecker and Radisch. Defendants asserted that the anticipated testimony from Dr. McMillen would "substantially contradict Dr. Mason's opinions" and that "his opinions could change the outcome in this case." Once again, Defendants sought

leave to make an offer of proof to fully preserve this issue for appellate review. However, Defendants' motion was denied.

Because the Workers' Compensation Act requires that processes, procedures, and discovery under the Act "be as summary and simple as reasonably may be," N.C. Gen. Stat. § 97-80(a) (2013), we have held that the rules of procedure and evidence that govern in our general courts of justice generally do not apply to the Industrial Commission's administrative fact-finding function. *Handy v. PPG Indus.*, 154 N.C. App. 311, 316, 571 S.E.2d 853, 857 (2002). However, "this Court has consistently held that the Commission must conform to court procedure and evidentiary rules where required to preserve justice and due process." *Id.* at 317, 571 S.E.2d at 857.

In *Allen v. K-Mart*, 137 N.C. App. 298, 528 S.E.2d 60 (2000), we concluded that despite the general principle that workers' compensation proceedings are not subject to the rules of procedure and evidence that govern our general courts, "[t]he opportunity to be heard and the right to cross-examine another party's witnesses are tantamount to due process and basic to our justice system" and must be observed by the Industrial Commission in such proceedings. *Id.* at 303-04, 528 S.E.2d at 64.

We believe that — like the right to cross-examine the opposing party's witnesses — the right to make a record sufficient for appellate review through an offer of proof is also necessary "to preserve justice and due process." *See Handy*, 154 N.C. App. at 317, 571 S.E.2d at 857; *see also State v. Brown*, 116 N.C. App. 445, 447, 448 S.E.2d 131, 132 (1994) ("It is fundamental that trial counsel be allowed to make a trial record sufficient for appellate review [by submitting an offer of proof.]").

We fail to see why the same notions of fundamental fairness requiring the general courts of justice to accept offers of proof should not likewise apply in workers' compensation proceedings.[1] Accordingly, while we reiterate that the rules of procedure and evidence governing proceedings in our general courts of justice do not generally apply in hearings before the Industrial Commission, we hold that, upon request, the

---

[1] Indeed, this Court has indicated that in administrative hearings — where, as with hearings before the Industrial Commission, evidentiary procedures "are not so formal as litigation conducted in superior courts" — administrative law judges should permit a party to make an offer of proof to demonstrate the substance of the excluded evidence where its significance is not readily apparent. *Eury v. N.C. Employment Sec. Comm'n*, 115 N.C. App. 590, 602-03, 446 S.E.2d 383, 390-91, *appeal dismissed and disc. review denied*, 338 N.C. 309, 451 S.E.2d 635 (1994).

Commission must afford a party in a workers' compensation proceeding the opportunity to make an offer of proof regarding the substance of evidence that has been excluded unless the substance of the evidence and its significance are readily apparent.[2]

## II. Denial of Motion to Reopen Record and Motion for Reconsideration

We now turn our attention to the question of whether the Commission committed reversible error in denying Defendants' motions to (1) reopen the record to receive the rebuttal testimony of Drs. Winecker, Radisch, and McMillen; and (2) reconsider its opinion and award in light of this rebuttal testimony.

Motions to receive additional evidence and motions for reconsideration are both reviewed by this Court for abuse of discretion. *Beard v. WakeMed*, ___ N.C. App. ___, ___, 753 S.E.2d 708, 712 (2014); *see Moore v. Davis Auto Serv.*, 118 N.C. App. 624, 629, 456 S.E.2d 847, 851 (1995) ("The Commission's power to receive additional evidence is a plenary power to be exercised in the sound discretion of the Commission . . . . and

---

[2] We note that offers of proof can take different forms with varying degrees of formality. *See* Kenneth S. Broun, 1 *Brandis & Broun on North Carolina Evidence* § 18, at 76-80 (7th ed. 2011) (explaining various methods of making offer of proof).

the Commission's determination in that regard will not be reviewed on appeal absent a showing of manifest abuse of discretion." (citation and quotation marks omitted)).

> The test for abuse of discretion is whether a decision is manifestly unsupported by reason, or so arbitrary that it could not have been the result of a reasoned decision. Because the reviewing court does not in the first instance make the judgment, the purpose of the reviewing court is not to substitute its judgment in place of the decision maker. Rather, the reviewing court sits only to insure that the decision could, in light of the factual context in which it is made, be the product of reason.

*Beard*, ___ N.C. App. at ___, 753 S.E.2d at 712-13 (citation omitted).

"In determining whether to accept new evidence, the Commission must consider the relative prejudices to the parties, the reasons for not producing the evidence at the first hearing, the nature of the testimony, and its probable effect upon the conclusion reached." *Andrews v. Fulcher Tire Sales and Serv.*, 120 N.C. App. 602, 606, 463 S.E.2d 425, 428 (1995) (citation and quotation marks omitted). However, when deciding whether to receive additional evidence, the Commission is not required to make specific findings of fact regarding its decision. *Keel v. H & V, Inc.*, 107 N.C. App. 536, 542, 421 S.E.2d 362, 366-67 (1992).

After carefully reviewing the excluded rebuttal testimony of Drs. Winecker, Radisch, and McMillen that we received in response to our 5 December 2013 order, we conclude that the Commission did not abuse its discretion in denying Defendants' motion to reopen the record and reconsider its opinion and award. Defendants' offer of proof revealed that Dr. McMillen — Defendants' rebuttal toxicologist — would have testified that (1) making a dosage determination of methadone from tissue samples is scientifically reliable; and (2) he could opine with a reasonable degree of medical certainty that Plaintiff had consumed four to eight 10-milligram tablets of methadone based on the concentration levels found during the autopsy.

However, with regard to the rebuttal testimony of Drs. Winecker and Radisch, Defendants' offer of proof reveals that they would merely have reaffirmed their opinions that neither could state to a reasonable degree of medical certainty that Plaintiff consumed more than two ten-milligram tablets of methadone (the prescribed dosage). Moreover, Dr. Winecker would have critiqued the methodology that Dr. McMillen — Defendants' rebuttal toxicologist — utilized to arrive at his dosage determination range of four to eight tablets on the ground that Dr. McMillen used standard median textbook values derived from

controlled clinical studies, which, in her opinion, were not appropriate in the present case given that Plaintiff's body was embalmed and then autopsied six months after his death.

Defendants contend that because of the pre-hearing agreement between the parties, Defendants were entitled to offer this rebuttal testimony and that, as a result, the Commission erred by denying their motion to reopen the record, consider the rebuttal testimony, and reconsider its opinion and award. As explained above, Defendants and Plaintiff entered into a pre-hearing agreement regarding the order in which medical depositions were to be scheduled and under what circumstances Defendants would be allowed to offer rebuttal testimony. Specifically, the parties agreed that if Dr. Mason attacked the toxicology report issued by the OCME, then Defendants could offer rebuttal testimony from Drs. Winecker and Radisch, and, if necessary, designate and offer testimony from a rebuttal toxicologist.

However, because Dr. Mason's testimony did not attack the toxicology report itself, the pre-hearing agreement was not triggered. In his deposition, Dr. Mason did not dispute the calculations of the methadone concentration levels found in Plaintiff's tissue samples. Nor did he contradict or criticize

any other information contained within the toxicology report prepared by the OCME. Instead, Dr. Mason offered his opinion as to what information could be *extrapolated* from tissue concentration data contained in the report. Specifically, he opined that methadone dosage could not be accurately determined from tissue samples because methadone is highly variable. This opinion did not attack the toxicology report itself, and as such, the Commission's denial of the motion to reopen the record and motion for reconsideration was not inconsistent with the parties' pre-hearing agreement.

Moreover, given that the overwhelming weight of the evidence — both in the record and in Defendants' offer of proof — indicates that methadone is highly variable and that tissue concentrations do not provide scientifically reliable determinations of methadone dosage, we cannot conclude that Defendants were prejudiced by the Commission's denial of their motions to reopen the record and to reconsider its opinion and award. This Court has repeatedly held that we will not find an abuse of discretion in the denial of a motion to consider additional evidence where the party has failed to show that it was actually prejudiced by the denial. *See Andrews*, 120 N.C. App. at 606, 463 S.E.2d at 428 (holding that defendants were not

prejudiced by denial of their motion to consider new evidence in workers' compensation proceeding because such evidence would "probably not affect the outcome" of the hearing, and, therefore, Commission did not abuse its discretion); *Moore*, 118 N.C. App. at 629, 456 S.E.2d at 851 (ruling that because additional evidence defendants sought to introduce in workers' compensation proceeding was cumulative, defendants were not prejudiced by denial of motion and failed to show manifest abuse of discretion). Here, we believe that Defendants have failed to show actual prejudice because their offer of proof demonstrates that had Defendants been allowed to submit rebuttal toxicology testimony from Dr. McMillen, their two primary witnesses — Drs. Winecker and Radisch — would have nevertheless reaffirmed their opinions that tissue concentrations do not provide scientifically reliable determinations of methadone dosage and that, as such, they could not state with a reasonable degree of medical certainty that Plaintiff consumed methadone in a manner contrary to his prescription.

Finally, Defendants contend that the Commission's rulings prevented them from effectively and meaningfully cross-examining Dr. Mason. In making this argument, Defendants primarily rely on this Court's decision in *Allen*.

In *Allen*, the plaintiff sustained an injury while moving a box of stationary and placing it in a shopping cart. *Allen*, 137 N.C. App. at 298-99, 528 S.E.2d at 61. The plaintiff's treating physician diagnosed her with a cervical and lumbar muscle strain and noted that she had also been suffering from panic attacks and depression for some time. *Id.* at 300, 528 S.E.2d at 62. As treatment of the plaintiff continued, the physician eventually diagnosed the plaintiff with fibromyalgia as well. *Id.* The doctor testified that her diagnosis of fibromyalgia was "sort of by exclusion because all of the other tests . . . looked pretty normal." *Id.* The plaintiff did not seek out a specialist familiar with fibromyalgia prior to her hearing before the deputy commissioner, and on 22 July 1997, the deputy commissioner entered an opinion and award determining that she was no longer disabled and awarding her medical expenses incurred as a result of the muscle strain but not for the treatment of fibromyalgia. *Id.*

The plaintiff appealed to the Full Commission and filed a motion "for independent psychiatric and fibromyalgia specialist examinations." *Id.* at 301, 528 S.E.2d at 62. The Commission granted the motion, and over the defendants' numerous objections, the Commission allowed the plaintiff to submit

reports from a psychiatrist and a general practitioner who had experience in treating and diagnosing fibromyalgia. *Id.* at 301, 528 S.E.2d at 63. The Commission relied on these reports in entering its opinion and award in which it concluded that the plaintiff's panic attacks, depression, and fibromyalgia "were caused or significantly aggravated by her injury by accident." *Id.* at 302, 528 S.E.2d at 63. This Court reversed, concluding that the Commission erred "by allowing significant new evidence to be admitted but denying [the] defendants the opportunity to depose or cross-examine the physicians, or [failing to require the] plaintiff to be examined by experts chosen by [the] defendants." *Id.* at 304, 528 S.E.2d at 64.

In so holding, we noted that (1) the defendants filed five separate objections to the admission of this evidence to which the Commission failed to respond; and (2) "[t]he evidence offered by [the psychiatrist and the practitioner experienced in diagnosing fibromyalgia] was completely different from any other evidence admitted up to then." *Id.* We thus concluded that "where the Commission allows a party to introduce new evidence which becomes the basis for its opinion and award, it must allow the other party to rebut or discredit that evidence." *Id.* at 304, 528 S.E.2d at 64-65.

Here, conversely, Defendants were able to extensively cross-examine Dr. Mason. Indeed, we note that Defendants were able to specifically question him concerning both (1) his opinion that methadone dosage could not be accurately determined using tissue concentrations; and (2) Dr. McMillen's opinion that Plaintiff's recorded levels of methadone could not have been reached by ingesting only two ten-milligram tablets of methadone. As such, *Allen* is distinguishable from the present case, and Defendants' argument on this issue is overruled.

### Conclusion

For the reasons stated above, we affirm the Commission's 18 December 2012 opinion and award and its 29 January 2013 order denying Defendants' motion for reconsideration.

AFFIRMED.

Judges HUNTER, JR. and ERVIN concur.