ALENE LEGETTE, Employee, Plaintiff-Appellee v. SCOTLAND MEMORIAL HOS-PITAL, Employer, SOUTH CAROLINA PROPERTY AND CASUALTY GUARANTY ASSOCIATION, Carrier, Defendants-Appellants

No. COA06-148

(Filed 6 February 2007)

**1. Workers' Compensation— findings of facts—nurse lifting patient—lymphedema**

There was competent evidence in a workers' compensation case supporting the Industrial Commission's findings of the facts in a case where a nurse suffered lymphedema after lifting a patient. Those findings were binding even though there was evidence to support contrary findings.

**2. Workers' Compensation— injury by accident—nurse lifting patient—short-staffed**

The findings of the Industrial Commission in a workers' compensation case establish that a nurse who suffered lymphedema after lifting a patient was performing a task that was not part of her normal work routine and that she suffered an accident. Moving patients was normally a two-person job, but the hospital was understaffed and plaintiff had to position her body differently than normal and use more force than was normal.

**3. Workers' Compensation— notice—actual—findings supported by plaintiff's testimony**

Plaintiff's testimony supported findings in a workers' compensation case that she had provided actual notice of her injury. A mistake in the date was not material.

**4. Workers' Compensation— actual notice—further findings—reasonable excuse for delay in written notice**

A finding of actual notice of the injury by accident in a workers' compensation case meant that findings about written notice and prejudice to defendant by plaintiff's delay in providing written notice were not required. Furthermore, a finding that plaintiff gave verbal notice of the injury to her shift supervisor constituted an implicit finding that plaintiff had a reasonable excuse for failing to give written notice within thirty days of the accident.

LEGETTE v. SCOTLAND MEM'L HOSP.

[181 N.C. App. 437 (2007)]

**5. Workers' Compensation— reopening record—no abuse of discretion**

The Industrial Commission did not abuse its discretion by reopening the record in a workers' compensation case to receive further evidence.

**6. Workers' Compensation— record reopened for plaintiff— no additional material from defendants**

The Industrial Commission did not abuse its discretion in a workers' compensation case by not allowing defendants to re-depose their expert witnesses, or to present new briefs or arguments, after plaintiff was allowed to take the deposition of a doctor after the evidence closed. Defendants had the opportunity to cross-examine plaintiff's expert during the deposition, they never requested the opportunity to re-depose their witnesses, and the Commission ruled only that no further oral arguments or briefs would be required, not that defendants could not present additional arguments.

**7. Workers' Compensation— testimony of doctor as expert— experience in treating condition**

Testimony from a doctor in a workers' compensation case about whether plaintiff's accident aggravated her lymphedema was sufficiently reliable, based on the experience of the doctor in treating lymphedema. Any lingering questions go to the weight of the testimony.

**8. Workers' Compensation— testimony of doctor—sufficiency**

The testimony of a doctor in a workers' compensation case about causation did not present "could" or "might" testimony and was not based solely on the notion of post hoc ergo propter hoc (after it, therefore because of it). The doctor repeatedly testified to a medical certainty that plaintiff's accident at work probably aggravated her pre-exiting lymphedema, and that plaintiff's description of the accident was consistent with trauma of the type associated with the development of lymphedema in someone with plaintiff's medical history.

Appeal by Defendants from opinion and award entered 6 October 2005 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 October 2006.

**LEGETTE v. SCOTLAND MEM'L HOSP.**

[181 N.C. App. 437 (2007)]

*The Jernigan Law Firm, by Gina E. Cammarano, for Plaintiff-Appellee.*

*Young Moore and Henderson P.A., by Jeffrey T. Linder, Michael W. Ballance, and Angela N. Farag, for Defendants-Appellants.*

McGEE, Judge.

Scotland Memorial Hospital (the hospital) and South Carolina Property and Casualty Guaranty Association (collectively Defendants) appeal from an opinion and award of the North Carolina Industrial Commission (the Commission) filed 6 October 2005. The Commission's opinion and award reversed an opinion and award by Deputy Commissioner Phillip A. Holmes, which had determined that Alene Legette (Plaintiff) did not sustain a compensable injury by accident.

At a hearing before the Deputy Commissioner, Plaintiff testified that she became a registered nurse in 1971, and began working as a nurse for the hospital in October 2000. Plaintiff worked the night shift every Friday, Saturday and Sunday. Plaintiff testified that she hurt her left arm as she was repositioning a patient during her shift at the hospital on 12 October 2001. Plaintiff testified that pulling a patient up in bed "was normally a two-person maneuver." However, because the hospital was understaffed, Plaintiff had to reposition a patient without assistance. She testified that because she had no help in moving the patient, it was necessary for her to stand closer to the patient and to the bed than she would have with assistance. Plaintiff also testified that the patient was heavy and non-ambulatory and that she had to use more force than if she had had assistance.

Plaintiff testified that when she moved the patient, she felt "a sharp pain underneath [her] left armpit or breast area extending toward the back of [her] shoulder and in [her] arm and shoulder[.]" Plaintiff further stated that "[a]lmost immediately in just a little while, [her] arm started swelling, and it extended further down [her] arm into [her] wrist to the tops of [her] fingers."

Plaintiff testified that she completed her shift and worked her next two shifts. Plaintiff took Ibuprofen for her pain and swelling. Plaintiff testified that during her 13 October 2001 to 14 October 2001 shift, she "went down to the emergency room with [her] shift supervisor, and [they] saw the emergency room doctor." Plaintiff testified that the doctor offered her Lortab for her pain, but Plaintiff declined to take the medicine while working.

Suzanne Parent (Ms. Parent) testified that she was a registered nurse on staff at the hospital in October 2001. Ms. Parent testified that she remembered when Plaintiff injured her arm and that Plaintiff told her she had injured her arm "pulling a patient." Ms. Parent also testified that she saw Plaintiff's arm the next night and that Plaintiff's "left arm had swollen about two times its normal size. It was a deep, beefy red." Gail Peterson (Ms. Peterson) testified that she was a "nursing supervisor, patient care supervisor" at the hospital in October 2001. Ms. Peterson testified that the hospital encouraged nurses to get help when moving heavy patients.

Plaintiff testified that she went to her family physician, Dr. James Currin (Dr. Currin), for treatment on 15 October 2001. Dr. Currin gave Plaintiff a prescription for an antibiotic and an anti-inflammatory. Plaintiff testified that she returned to work for her next series of weekend shifts on 19 October 2001. However, Plaintiff showed her arm to her supervisor, Ms. Peterson, and told Ms. Peterson that the pain and swelling in her left arm was severe. Ms. Peterson told Plaintiff to go home. Plaintiff left work on 20 October 2001 and has not returned to work.

Plaintiff saw Dr. Diana B. McNeill (Dr. McNeill) at Duke University Medical Center on 19 November 2001. Dr. McNeill noted that Plaintiff was having a "significant problem with lymphedema in the left arm after heavy lifting." Dr. McNeill also noted that Plaintiff had a "history of breast carcinoma with left modified radical mastectomy with no dissection 10/10 nodes negative and 37 radiation treatments since 1998." Dr. McNeill also stated: "I think [Plaintiff] really needs a referral to the lymphedema clinic." Plaintiff was also seen on 27 November 2001 by Dr. Brian Parkes (Dr. Parkes), a general surgeon in Laurinburg, who also noted Plaintiff's history of breast cancer. Dr. Parkes stated: "[Plaintiff] was doing some heavy lifting at work and felt pain in her biceps region and serratus anterior. Subsequently she developed pitting edema from the elbow to the hand." Plaintiff was also seen by several other doctors.

After the hearing before the Deputy Commissioner, Defendants took the deposition of Dr. George Paschal, III (Dr. Paschal), who testified that about twenty percent of people who have radiation and surgery for breast cancer will develop lymphedema. Dr. Paschal explained that lymphedema is a disorder caused by "the malarrangement of lymphatic flow secondary to an obstruction." Dr. Paschal further stated that "[t]he disorder will slowly progress over time until it

reaches a point that symptoms become noticeable to the patient." Dr. Paschal further testified as follows: "The scarring slowly contracts over a period of time, three to five years usually before you see any obstruction of flow, although it can happen sooner and it can happen later." Dr. Paschal stated that Plaintiff likely suffered from lymphedema. However, Dr. Paschal also stated that "the activities [Plaintiff] performed on the day in question were simply what she was doing when the lymphatic flow was curtailed sufficient to bring her condition to her attention, but did not cause or materially aggravate or materially accelerate the underlying pathology."

The Deputy Commissioner filed an opinion and award on 12 July 2004, concluding that Plaintiff did not sustain a compensable injury by accident. Plaintiff appealed to the Commission and filed a Form 44, setting forth several alleged errors. After the parties filed briefs, the Commission ordered the case to be reopened. The Commission further ordered that "the parties shall have 60 days from the date of [the] Order within which to take the deposition of Dr. James Currin."

Plaintiff's counsel tendered Dr. Currin as an expert in medicine, with a specialty in family practice, and Defendants' counsel objected. Dr. Currin testified that he was a board certified family practitioner who practiced at Laurinburg Family Practice from 1980 until his retirement on 6 July 2004. Over the course of his twenty-five year career, Dr. Currin treated about one hundred patients with lymphedema. However, because Dr. Currin saw his patients multiple times during his twenty-five year career, he may have seen those one hundred patients with lymphedema "a thousand times."

Dr. Currin testified that he saw Plaintiff in October 2001, and diagnosed her with lymphedema. Plaintiff's arm was swollen and painful. Dr. Currin testified that Plaintiff's alleged accident at work "may have caused [her left arm swelling], or certainly may have aggravated [her left arm swelling] if she was prone to lymphedema related to the previous breast cancer surgery." Dr. Currin also testified that Plaintiff's alleged accident "probably aggravated [her left arm swelling]." Dr. Currin further testified as follows:

Q. Okay, and what's the basis for your opinion?

A. The fact that she had no symptoms prior to that day.

Q. Okay, and was the way that [Plaintiff] described the incident consistent with a trauma of the type that would be associated

**LEGETTE v. SCOTLAND MEM'L HOSP.**

[181 N.C. App. 437 (2007)]

with the development of lymphedema with someone with her history?

[DEFENDANTS' COUNSEL]: Objection.

A. Yes.

Dr. Currin also testified that, assuming Plaintiff had some pre-existing, asymptomatic lymphedema, Plaintiff's alleged accident at work "did aggravate the condition." Dr. Currin testified that the basis of his opinion was that "[Plaintiff] had had no problems with that arm prior to that injury."

On redirect examination, Dr. Currin testified as follows:

Q. Okay, but would you be able to say that [Plaintiff's alleged accident] more likely than not aggravated [any pre-existing asymptomatic lymphedema]?

A. Based on my history from her that day that prior to that incident she had had no problem, and after that her symptoms started, it would be that that's when the problem started.

Q. Okay. So just to clarify, because it's important, as you talked about before . . ., can you testify that . . . that incident more likely than not or probably aggravated her underlying . . . condition or her predisposition to lymphedema?

[DEFENDANTS' COUNSEL]: Objection.

A. Yes.

The Commission filed an opinion and award on 6 October 2005, concluding, *inter alia*, that on 12 October 2001, Plaintiff sustained an injury by accident arising out of and in the course of her employment with the hospital. The Commission also concluded that Defendants had actual notice of Plaintiff's injury by accident. Defendants appeal.

Our review of an opinion and award by the Commission is limited to two inquiries: (1) whether there is any competent evidence in the record to support the Commission's findings of fact; and (2) whether the Commission's conclusions of law are justified by the findings of fact. *Counts v. Black & Decker Corp.*, 121 N.C. App. 387, 389, 465 S.E.2d 343, 345, *disc. review denied*, 343 N.C. 305, 471 S.E.2d 68 (1996). If supported by competent evidence, the Commission's findings are conclusive even if the evidence might also support contrary findings. *Jones v. Candler Mobile Village*, 118 N.C. App. 719, 721, 457

S.E.2d 315, 317 (1995). The Commission's conclusions of law are reviewable *de novo. Whitfield v. Laboratory Corp. of Am.*, 158 N.C. App. 341, 348, 581 S.E.2d 778, 783 (2003).

## I.

[1] Defendants first argue the Commission erred by concluding that "[P]laintiff sustained an injury by accident arising out of and in the course of her employment with [the hospital]." An accident is " 'an unlooked for and untoward event which is not expected or designed by the person who suffers the injury.' " *Porter v. Shelby Knit, Inc.*, 46 N.C. App. 22, 26, 264 S.E.2d 360, 363 (1980) (quoting *Hensley v. Cooperative*, 246 N.C. 274, 278, 98 S.E.2d 289, 292 (1957)). "The elements of an 'accident' are the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences." *Id.* However, "once an activity, even a strenuous or otherwise unusual activity, becomes a part of the employee's normal work routine, an injury caused by such activity is not the result of an interruption of the work routine or otherwise an 'injury by accident' under the Workers' Compensation Act." *Bowles v. CTS of Asheville*, 77 N.C. App. 547, 550, 335 S.E.2d 502, 504 (1985).

In the present case, the Commission made the following relevant findings of fact:

2. On October 12, 2001, [P]laintiff was injured while repositioning a patient. Because the hospital was understaffed, she had no one to assist her in what was normally a two-person maneuver to pull a patient up in bed. Therefore, [P]laintiff moved the patient by herself, which meant that she had to position her body differently than she normally would, by standing closer to the patient and to the head of the bed. This particular patient was heavy, nonambulatory, and unable to assist [P]laintiff with the move. Plaintiff had to use more force with her arms and legs than usual. As she moved the patient, [P]laintiff felt a sharp pain underneath her left armpit and in her breast area.

3. Soon after the lifting incident, [P]laintiff's left arm began swelling into her wrist and fingers. Sue Parent, another nurse on the floor, saw [P]laintiff's swollen left arm and recalled that [P]laintiff said she injured the arm pulling a patient. Ms. Parent also testified that the following night [P]laintiff's arm was swollen to twice the normal size and was dark red. Plaintiff's supervisor did not recall whether [P]laintiff reported the left arm

injury on October 12, 2001. Plaintiff continued to work the rest of her shift and took Ibuprofen to try ro reduce the pain and swelling. Plaintiff also worked the following two nights. During the shift on October 13, 2001, [P]laintiff went with Monica Miller, the shift supervisor, to the Emergency Room where a doctor offered to give [P]laintiff Lortab, a prescription painkiller that [P]laintiff declined to take while working.

Defendants do not specifically challenge the testimonial support for these findings. Rather, Defendants argue that Plaintiff could not recall the name, gender or room number of the patient she was lifting at the time of the alleged accident. Defendants also argue that the supervisor to whom Plaintiff allegedly reported the accident did not work on 13 October 2001 and that the hospital's records did not show evidence that Plaintiff was seen in the emergency room on that date. Defendants further argue that, although the Commission found it was unusual for Plaintiff to have moved a patient by herself, Plaintiff admitted that she had moved patients by herself on prior occasions. Plaintiff's supervisor, Ms. Peterson, also testified that other nurses lifted patients by themselves. Furthermore, Defendants argue that although the Commission found that the patient Plaintiff moved was non-ambulatory and heavy, most patients are moved when they are asleep and therefore most patients are heavy and non-ambulatory.

However, even though there may have been competent evidence in the record to support contrary findings, as Defendants assert, the findings of the Commission are binding because they are supported by the competent testimony of Plaintiff and Ms. Parent. *See Jones*, 118 N.C. App. at 721, 457 S.E.2d at 317.

**[2]** Defendants also argue that "even if one believes [P]laintiff's story, her incident at work does not constitute a compensable 'accident.' " In support of their argument, Defendants cite *Landry v. U.S. Airways, Inc.*, 150 N.C. App. 121, 563 S.E.2d 23, *rev'd per curiam for reasons stated in the dissent*, 356 N.C. 419, 571 S.E.2d 586 (2002), where our Supreme Court adopted Judge Hunter's dissent. In *Landry*, the plaintiff was injured at work when he grabbed a mailbag that was heavier than he expected. *Id.* at 122, 563 S.E.2d at 24. The Commission found that the plaintiff was required to load and unload mail, freight and luggage as part of his job; that the packages, which included mail sacks, ranged in weight from one pound to four hundred pounds; that there was no way for the plaintiff to know how much the packages weighed until he picked them up; that it was not unusual for certain mailbags to be heavy and for the plaintiff to be

unaware of this until he picked them up; that the plaintiff was performing his normal job duties in the normal manner and using his normal motion when he was injured; that the plaintiff never knew the weight of a mailbag until he lifted it; and that "[m]ailbags often varied in weight and were heavier or lighter than anticipated." *Id.* at 122-23, 563 S.E.2d at 25. The Commission then concluded that the plaintiff did not sustain an injury by accident. *Id.* at 123, 563 S.E.2d at 25. The majority in the Court of Appeals held that the Commission's finding that "[m]ailbags often . . . were heavier or lighter than anticipated[,]" was unsupported by the evidence because the Plaintiff never testified that the fact that mailbags were often overweight was unanticipated by him. *Id.* at 124, 563 S.E.2d at 26. The majority also pointed out that the plaintiff "testified he could generally estimate the weight of mailbags by sight but found this particular mailbag heavier than anticipated." *Id.* The majority held that the plaintiff's undisputed testimony supported a finding that "an unlooked for and untoward event occurred which was not expected by [the] [p]laintiff[,]" leading to the conclusion that the plaintiff sustained an injury by accident. *Id.* Thus, the majority reversed the Commission and remanded the matter. *Id.* at 124-25, 563 S.E.2d at 26.

. The dissent stated:

> Although [the] plaintiff may not have specifically stated that the mailbags were often heavier or lighter than "anticipated," the evidence as a whole clearly supports the Commission's findings that [the] plaintiff's job required him to lift weights of up to 400 pounds; that [the] plaintiff never knew prior to lifting mailbags how much they weighed; that it was not unusual for mailbags to be extremely heavy and that [the] plaintiff would be unaware of the heavy weight of the bags until he lifted them; and that [the] plaintiff was engaged in his normal duties and using his normal motions when injured.

*Id.* at 126, 563 S.E.2d at 27. The dissent also held that these findings, which were supported by competent evidence, supported the Commission's conclusion that the plaintiff did not sustain an injury by accident. *Id.* On appeal, our Supreme Court adopted the dissent, thereby reversing the Court of Appeals' majority opinion. *Landry,* 356 N.C. at 419, 571 S.E.2d at 587.

Unlike *Landry,* the findings in the present case establish that Plaintiff was performing a task that was not part of her normal work routine when she was injured. Moving patients was normally a two-

person job. Again, although there was evidence that could have supported a contrary finding, we are bound by the findings because they are supported by the competent testimony of Plaintiff and Ms. Parent. *See Jones*, 118 N.C. App. at 721, 457 S.E.2d at 317. Because the hospital was understaffed and Plaintiff had to move the patient by herself, she had to position her body differently than normal and had to use more force than normal. On the contrary, the plaintiff in *Landry*, as determined by the findings in that case, was performing his normal job in the usual manner when he was injured. *Landry*, 150 N.C. App. at 126, 563 S.E.2d at 27. Moreover, in *Landry*, it was not unusual for mailbags to be extremely heavy and for the plaintiff to be unaware of this until he lifted them. *Id.*

We conclude that the Commission's findings of fact, which are supported by competent evidence, support its conclusion of law that "[P]laintiff sustained an injury by accident arising out of and in the course of her employment with [the hospital]." Therefore, we affirm the order of the Commission.

II.

[3] Defendants next argue that even if Plaintiff suffered a compensable injury by accident, Plaintiff's claim still should have been barred for failure to give timely written notice of the accident to her employer, pursuant to N.C. Gen. Stat. § 97-22. Under N.C. Gen. Stat. § 97-22 (2005),

Every injured employee or his representative shall immediately on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the employer a written notice of the accident, and . . . no compensation shall be payable unless such written notice is given within 30 days after the occurrence of the accident or death, unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby.

However, our Court has held that the "[f]ailure of an employee to provide written notice of her injury will not bar her claim where the employer has actual knowledge of her injury." *Lakey v. U.S. Airways, Inc.*, 155 N.C. App. 169, 172, 573 S.E.2d 703, 706 (2002), *disc. review denied*, 357 N.C. 251, 582 S.E.2d 271 (2003).

Defendants make three specific arguments: (1) there is no evidence to support the Commission's finding that the hospital had

actual notice of Plaintiff's injury by accident on 13 October 2001; (2) the Commission failed to find that Plaintiff provided a reasonable excuse for not giving written notice; and (3) the Commission's findings do not justify its conclusion that Defendants were not prejudiced.

The Commission found that "[the hospital] had actual, verbal notice of the injury by accident on October 13, 2001, when [P]laintiff's supervisor went with her to the Emergency Room[.]" Defendants argue (1) that there is no competent evidence to support the finding because the emergency room records do not show that Plaintiff was seen there, (2) that the nurses' communication notebook shows that the person to whom Plaintiff allegedly reported her injury, Monica Miller, did not work with Plaintiff on 13 October 2001, and (3) that Arletha Brown was Plaintiff's shift supervisor on 13 October 2001 and testified that Plaintiff did not report an injury to her.

The Commission's challenged finding is supported by the testimony of Plaintiff, who testified that her shift supervisor, Monica Miller, accompanied her to the hospital's emergency room on 13 October 2001. Although the Commission appears to have been mistaken in referring to the date as 13 October 2001, rather than 14 October 2001, when Monica Miller filled in as Plaintiff's shift supervisor, this mistake is not material. The remainder of the Commission's finding is supported by competent evidence. Therefore, the hospital had actual notice of Plaintiff's injury by accident, which obviated the need for Plaintiff to provide written notice. *See Lakey*, 155 N.C. App. at 172, 573 S.E.2d at 706.

**[4]** Defendants also argue the Commission erred by failing to find that Plaintiff had a reasonable excuse for the delay in providing written notice. However, because the Commission found that Defendants had actual knowledge of Plaintiff's injury, the Commission was not required to make a finding regarding written notice. Even assuming, *arguendo*, that the Commission was required to make such a finding, the Commission did find that "[P]laintiff's application for disability benefits provided written notice of the incident on November 27, 2001." Although this was more than thirty days after the incident, our Court has held that "a 'reasonable excuse' for failing to give timely notice includes 'a belief that [the] employer is already cognizant of the accident.'" *Westbrooks v. Bowes*, 130 N.C. App. 517, 528, 503 S.E.2d 409, 416 (1998) (quoting *Lawton v. County of Durham*, 85 N.C. App. 589, 592, 355 S.E.2d 158, 160 (1987)). Therefore, by finding that

Plaintiff gave verbal notice of the injury by accident to her shift supervisor, the Commission implicitly found that Plaintiff believed the hospital was already cognizant of her injury and that Plaintiff had a reasonable excuse for failing to give written notice within thirty days of the accident.

Defendants also argue the Commission's findings do not support its conclusion that Defendants were not prejudiced by Plaintiff's delay in providing written notice of the accident. However, because the Commission found that the hospital had actual knowledge of Plaintiff's injury, the Commission was not required to make findings regarding prejudice to Defendants. We overrule the assignments of error grouped under this argument.

III.

**[5]** Defendants next argue the Commission erred

> by allowing Plaintiff to take the deposition of Dr. James Currin after the record had closed, after briefs had been presented, and after oral argument had taken place, where Plaintiff had not made such a request before the Deputy Commissioner and did not make such a request in either the Form 44 or brief to the . . . Commission on appeal.

Under N.C. Gen. Stat. § 97-85 (2005),

> [i]f application is made to the Commission within 15 days from the date when notice of the award shall have been given, the full Commission shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award[.]

Defendants argue that N.C.G.S. § 97-85 "is predicated on the notion that the party seeking to reopen the record will have raised this as an issue with particularity in advance, and the opposing party will have been given an opportunity to respond." Defendants cite *Roberts v. Wal-Mart Stores, Inc.*, 173 N.C. App. 740, 619 S.E.2d at 907 (2005), where our Court held that the portion of the Workers' Compensation Rules requiring appellants to state with particularity the grounds for appeal may not be waived by the Commission. *Id.* at 744, 619 S.E.2d at 910. In *Roberts*, the plaintiff alleged that while working in the defendant-employer's cafe, she "felt a snap in her lower back as she was lifting a bag-in-a-box of soft drink syrup weighing fifty-five

pounds." *Id.* at 741, 619 S.E.2d at 908. The plaintiff notified the defendant-employer of her injury more than six months after the incident. *Id.* at 742, 619 S.E.2d at 909. A deputy commissioner held that the plaintiff suffered a compensable incident at work, but concluded that the plaintiff's claim should be denied for failure to give timely notice pursuant to N.C.G.S. § 97-22. *Id.* The plaintiff filed a notice of appeal with the Commission, but did not file a Form 44 or a brief with the Commission. *Id.*

In *Roberts*, the Commission issued an order waiving oral argument and announced it would file a decision based upon the record. *Id.* The defendant-employer and the defendant insurance company (collectively the defendants) petitioned the Commission to allow them to present oral and written arguments, but never received a response. *Id.* The Commission found that the plaintiff had been unable to earn the same or greater wages for a period of approximately two months and awarded the plaintiff total disability compensation for that period of time. *Id.* at 742-43, 619 S.E.2d at 909. The Commission further instructed the defendants to pay all of the plaintiff's medical expenses incurred as a result of the compensable injury. *Id.* at 743, 619 S.E.2d at 909.

On appeal, the defendants argued "they were prejudiced by the . . . Commission's sudden declaration . . . that [the] plaintiff's claims would be decided without briefs or oral arguments and that its decision would be based upon the record." *Id.* at 743-44, 619 S.E.2d at 910. Our Court recognized that pursuant to Rule 701(2) of the Workers' Compensation Rules, the " '[f]ailure to state with particularity the grounds for appeal shall result in abandonment of such grounds, as provided in paragraph (3).' " *Id.* at 744, 619 S.E.2d at 910 (quoting Workers' Comp. R. of N.C. Indus. Comm'n 701(2), 2005 Ann. R. (N.C.) 919, 943). Rule 701(3) states that " '[p]articular grounds for appeal not set forth in the application for review shall be deemed abandoned, and argument thereon shall not be heard before the Full Commission.' " *Id.* (quoting Workers' Comp. R. of N.C. Indus. Comm'n 701(3), 2005 Ann. R. (N.C.) 919, 943). While our Court also recognized that the Commission has the discretion to waive the use of a Form 44, we held that "the portion of Rule 701 requiring [an] appellant to state with particularity the grounds for appeal may not be waived by the . . . Commission." *Id.* Our Court reversed the Commission and vacated its opinion and award. *Id.*

In the present case, based upon *Roberts*, Defendants argue they were unfairly deprived of notice that Plaintiff would request the

opportunity to present additional evidence. However, *Roberts* is inapposite. In *Roberts*, the Commission violated its own rules by deciding the appeal based upon the record when the plaintiff never set forth the grounds for appeal. In the present case, Plaintiff filed a Form 44 setting forth the grounds for appeal. However, because the Deputy Commissioner determined that Plaintiff did not suffer an injury by accident, Plaintiff's grounds for appeal focused on that determination. When Plaintiff made application to the Commission, the Commission was authorized, pursuant to N.C.G.S. § 97-85, to re-open the record to take additional evidence.

The present case is analogous to *Lynch v. Construction Co.*, 41 N.C. App. 127, 254 S.E.2d 236, *disc. review denied*, 298 N.C. 298, 259 S.E.2d 914 (1979), where the plaintiff sought benefits for an injury by accident that allegedly occurred at work. *Id.* at 127, 254 S.E.2d at 236. The plaintiff alleged he slipped and fell at work on 1 March 1973, but did not report the fall to his foreman until 5 March 1973. *Id.* at 127-28, 254 S.E.2d at 236. The plaintiff was treated for pain two weeks after the accident and continued to work for the defendant until 8 May 1973, when he was admitted to the hospital. *Id.* at 128, 254 S.E.2d at 236-37. Dr. Guy L. Odom (Dr. Odom) operated on the plaintiff to remove a ruptured disc on 22 May 1973 and continued to treat the plaintiff thereafter. *Id.* at 128, 254 S.E.2d at 237. Dr. Odom opined that the "plaintiff reached maximum improvement by 13 December 1973 with a 20 percent permanent partial disability." *Id.* "The deputy hearing commissioner sustained objections by [the] defendant's counsel to two questions asked of Dr. Odom as to whether the witness had an opinion satisfactory to himself 'as to what caused' the condition of which [the] plaintiff complained." *Id.* Dr. Odom then testified that the plaintiff's condition could have been caused by several factors other than a fall. *Id.* The deputy commissioner found that the plaintiff sustained an injury by accident on 1 March 1973, entitling him to "temporary total disability from 8 May 1973 to 13 December 1973 and for 20 percent permanent partial disability . . . for a period of sixty weeks." *Id.*

On appeal, the Commission, on its own motion, remanded the case to take additional medical testimony regarding the causal connection. *Id.* The defendant appealed and we granted the defendant's petition for writ of certiorari. *Id.* at 129, 254 S.E.2d at 237. The defendant argued the Commission exceeded the power granted to it by N.C.G.S. § 97-85 because no good ground was shown to receive further evidence. *Id.* The defendant specifically argued that "the

LEGETTE v. SCOTLAND MEM'L HOSP.

[181 N.C. App. 437 (2007)]

'good ground' which [N.C.]G.S. [§] 97-85 requires to be shown before the Commission may 'receive further evidence' means something more than the mere failure of a claimant to make out his case after he has had a fair opportunity to do so." *Id.* at 130, 254 S.E.2d at 238.

Our Court recognized that "[i]t is axiomatic that the Workmens' Compensation Act should be liberally construed to achieve its purpose of providing compensation to employees injured by accident arising out of and in the course of their employment[.]" *Id.* Our Court also recognized that the strict procedural rules applicable to ordinary civil actions are not appropriate in workers' compensation proceedings. *Id.* Our Court held that the powers given to the Commission under N.C.G.S. § 97-85 "are plenary powers to be exercised in the sound discretion of the Commission. Specifically, we hold that whether 'good ground be shown therefore' in any particular case is a matter within the sound discretion of the Commission[.]" *Id.* at 130-31, 254 S.E.2d at 238. We then held that the Commission did not abuse its discretion, and we affirmed the Commission's opinion and award. *Id.* at 131, 254 S.E.2d at 238.

In the present case, as in *Lynch*, Defendants have not demonstrated that the Commission abused its discretion by reopening the record to receive further evidence. Because the Deputy Commissioner determined that Plaintiff did not sustain a compensable injury by accident, Plaintiff's grounds for appeal focused on that ruling. The Commission had the discretion to reopen the record on the issue of causation, especially where the Deputy Commissioner did not reach that issue. We overrule the assignments of error grouped under this argument.

IV.

[6] Defendants argue the Commission abused its discretion and deprived Defendants of due process by allowing Plaintiff to take Dr. Currin's deposition "where Defendants were not subsequently allowed to [re-depose] their expert witnesses, or to present new briefs or arguments encompassing all of the evidence in the case." Defendants rely upon *Allen v. K-Mart*, 137 N.C. App. 298, 528 S.E.2d 60 (2000), where the plaintiff, a stocker for K-Mart, sustained a compensable injury "when she lifted a box of stationery to put into a shopping cart and pulled a muscle in her left side." *Id.* at 298-99, 528 S.E.2d at 61. The plaintiff was seen by a doctor at Urgent Care, and then by an orthopedic surgeon, who released the plaintiff to return to work without restriction and who further stated that the plaintiff

would not have any permanent partial impairment rating. *Id.* at 299, 528 S.E.2d at 61-62. The plaintiff continued to work until she had a disagreement with a personnel officer. *Id.* at 299, 528 S.E.2d at 62. The plaintiff did not return to work after 30 August 1995. *Id.*

The plaintiff began seeing a family physician, Dr. Miller, who initially diagnosed the plaintiff as having a cervical and lumbar muscle strain. *Id.* at 300, 528 S.E.2d at 62. Dr. Miller also noted that the plaintiff "had been depressed and suffering from anxiety/panic attacks for more than one and one-half years." *Id.* Dr. Miller eventually "diagnosed [the] plaintiff with fibromyalgia 'sort of by exclusion because all of the other tests . . . looked pretty normal.' " *Id.* However, the plaintiff never sought a specialist in the field of fibromyalgia prior to the hearing before a deputy commissioner. *Id.* The deputy commissioner found that as of 30 August 1995, the plaintiff was no longer disabled as a result of her compensable injury. *Id.* The deputy commissioner awarded the plaintiff all medical expenses she incurred as a result of her compensable injury, but denied any medical expenses for treatment of fibromyalgia. *Id.*

The plaintiff filed notice of appeal and, five months later, filed a "motion for independent psychiatric and fibromyalgia specialist examinations." *Id.* at 300-01, 528 S.E.2d at 62. The defendants objected but the Commission did not respond to the objection, and the Commission allowed the plaintiff sixty days to obtain psychiatric and rheumatology expert opinions. *Id.* at 301, 528 S.E.2d at 62-63. The Commission allowed the plaintiff an additional extension of time and the plaintiff then submitted a psychiatric report by Dr. Margaret Dorfman (Dr. Dorfman). *Id.* at 301, 528 S.E.2d at 63. The plaintiff also asked the Commission to allow her to see Dr. Alan Spanos (Dr. Spanos), who was a general practitioner with experience in diagnosing and treating fibromyalgia, instead of seeing a rheumatologist. *Id.* The defendants again objected, but the Commission allowed the plaintiff to see Dr. Spanos and submit his report to the Commission, without addressing the defendants' objection. *Id.* at 301-02, 528 S.E.2d at 63.

The Commission relied upon Dr. Dorfman's report to find that the plaintiff's "psychiatric problems, panic attacks and depression . . . were caused or significantly aggravated by her injury by accident[.]" *Id.* at 302, 528 S.E.2d at 63. The Commission relied upon Dr. Spanos' report to find that the plaintiff's "fibromyalgia, related pain syndromes and her musculoskeletal and neuropathic disfunc-

tions . . . were caused or significantly aggravated by her injury by accident[.]" *Id.*

On appeal, our Court reversed the Commission's opinion and award, recognizing that "[t]he evidence offered by Drs. Spanos and Dorfman was completely different from any other evidence admitted up to then." *Id.* at 304, 528 S.E.2d at 64-65. We also recognized that the defendants had filed five separate objections to the independent medical examinations, a request to depose the new physicians, and six requests for an independent medical examination by a physician of the defendants' choosing, and that the Commission did not respond to any of the objections or requests. *Id.* at 302-03, 528 S.E.2d at 63-64. Our Court held as follows:

> We agree with [the] defendants that the Commission manifestly abused its discretion by allowing significant new evidence to be admitted but denying [the] defendants the opportunity to depose or cross-examine the physicians, or requiring [the] plaintiff to be examined by experts chosen by [the] defendants. Therefore, we hold that where the Commission allows a party to introduce new evidence which becomes the basis for its opinion and award, it must allow the other party the opportunity to rebut or discredit that evidence.

*Id.* at 304, 528 S.E.2d at 64-65.

In the present case, unlike in *Allen*, Defendants had the opportunity to, and did, cross-examine Dr. Currin during his deposition. Defendants also argue they were not allowed to re-depose their expert witnesses and were not allowed to present new briefs or arguments. However, Defendants never requested the opportunity to re-depose their witnesses. Rather, in their letter objecting to the Commission's decision to allow Plaintiff to depose Dr. Currin, Defendants stated:

> It would be prejudicial to [D]efendants, and contrary to basic procedure, for [P]laintiff to now be allowed to call her expert witnesses after [D]efendants have called theirs. <u>The only remedy would be to allow [D]efendants to re-call Dr. Paschal and Mr. Moore again after [P]laintiff's experts testify, and tax the costs of those depositions to [P]laintiff.</u>

Also, the Commission did not rule that Defendants could not present additional argument. The Commission only stated, in its order reopening the case, that "[n]o further oral arguments or briefs will

be required." For the reasons stated above, we overrule these assignments of error.

## V.

[7] Defendants argue the Commission erred by relying upon the testimony of Dr. Currin. Specifically, Defendants argue that Dr. Currin's testimony was not sufficiently reliable under the standard set forth in *State v. Goode*, 341 N.C. 513, 461 S.E.2d 631 (1995), and reiterated in *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 597 S.E.2d 674 (2004). Defendants argue that Dr. Currin's opinion that Plaintiff's accident at work probably aggravated her lymphedema was not based upon a reliable theory because Dr. Currin did not cite any established medical techniques or review any studies establishing that a single incident can aggravate pre-existing lymphedema. Defendants also argue that Dr. Currin's testimony was legally insufficient to prove causation because his opinion was based solely on the notion of *post hoc ergo propter hoc.*

It appears that our courts have not decided whether the standard for admissibility of expert testimony set forth in *Goode* and *Howerton* applies in workers' compensation cases. However, even assuming *arguendo*, without deciding, that the *Goode* and *Howerton* standard applies, Dr. Currin's testimony was sufficiently reliable. In *Howerton*, our Supreme Court reiterated the three-part test for evaluating the admissibility of expert testimony which had been stated in *Goode*: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? . . . (2) Is the witness testifying at trial qualified as an expert in that area of testimony? . . . (3) Is the expert's testimony relevant?" *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686 (citing *Goode*, 341 N.C. at 527-29, 461 S.E.2d at 639-41).

When determining the reliability of expert testimony, the trial court should first "look to precedent for guidance in determining whether the theoretical or technical methodology underlying an expert's opinion is reliable." *Id.* at 459, 597 S.E.2d at 687. However, where the trial court is without precedential guidance, the trial court should focus on the following nonexclusive factors of reliability: " 'the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury . . ., and independent research conducted by the expert.' " *Id.* at 460, 597 S.E.2d at 687 (quoting *State v. Pennington*, 327 N.C. 89, 98, 393 S.E.2d 847, 852-53 (1990)). Our Supreme Court emphasized that "reliability is thus a preliminary, foundational inquiry into the basic methodological

LEGETTE v. SCOTLAND MEM'L HOSP.

[181 N.C. App. 437 (2007)]

adequacy of an area of expert testimony. This assessment does not, however, go so far as to require the expert's testimony to be proven conclusively reliable or indisputably valid before it can be admitted into evidence." *Id.* Therefore, our Supreme Court held: "[O]nce the trial court makes a preliminary determination that the scientific or technical area underlying a qualified expert's opinion is sufficiently reliable (and, of course, relevant), any lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility." *Id.* at 461, 597 S.E.2d at 688.

Dr. Currin testified that he was a board certified family practitioner who practiced at Laurinburg Family Practice from 1980 until his retirement on 6 July 2004. Over the course of his twenty-five year career, Dr. Currin treated about one hundred patients with lymphedema. However, because Dr. Currin saw his patients multiple times during his twenty-five year career, he may have seen those one hundred patients with lymphedema "a thousand times." Because of Dr. Currin's experience in treating lymphedema, we hold that Dr. Currin's expert opinion testimony was sufficiently reliable. As in *Howerton*, "any lingering questions or controversy concerning the quality of the expert's conclusions go to the weight of the testimony rather than its admissibility." *Howerton*, 358 N.C. at 461, 597 S.E.2d at 688.

[8] Defendants also argue that Dr. Currin's testimony was legally insufficient because it was based solely upon the notion of *post hoc ergo propter hoc.* A claimant in a workers' compensation case bears the burden of proving, by a preponderance of the evidence, a causal relationship between the injury and the claimant's employment. *Adams v. Metals USA*, 168 N.C. App. 469, 475, 608 S.E.2d 357, 361, *aff'd per curiam*, 360 N.C. 54, 619 S.E.2d 495 (2005). "[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). "The quantum and quality of the evidence required to establish *prima facie* the causal relationship will of course vary with the complexity of the injury itself." *Id.* " '[C]ould' or 'might' expert testimony [is] insufficient to support a causal connection when there is additional evidence or testimony showing the expert's opinion to be a guess or mere speculation." *Young v. Hickory Bus. Furn.*, 353 N.C. 227, 233,

538 S.E.2d 912, 916 (2000). Moreover, "if an expert's opinion as to causation is wholly premised on the notion of *post hoc ergo propter hoc* (after it, therefore because of it), then the expert has not provided competent record evidence of causation." *Singletary v. N.C. Baptist Hosp.*, 174 N.C. App. 147, 154, 619 S.E.2d 888, 893 (2005) (citing *Young*, 353 N.C. at 232-33, 538 S.E.2d at 916).

In the present case, Dr. Currin repeatedly testified to a medical certainty that Plaintiff's accident at work probably aggravated her pre-existing lymphedema. Therefore, despite Defendants' urging, we are not faced with a situation where Dr. Currin only presented "could" or "might" testimony. Furthermore, Dr. Currin's opinion testimony was not based solely on the notion of *post hoc ergo propter hoc.* Dr. Currin also testified that Plaintiff's description of the accident was consistent with a trauma of the type that would be associated with the development of lymphedema in someone with Plaintiff's medical history.

In *Young*, our Supreme Court held that the evidence on causation in that case, which was solely based upon the notion of *post hoc ergo propter hoc*, was insufficient to support the Commission's findings of fact that the plaintiff's fibromyalgia was caused by an accident at work. *Id.* at 233, 538 S.E.2d at 917. However, in *Young*, the plaintiff's expert on causation testified that "fibromyalgia [is] an illness or condition of unknown etiology[,]" *id.* at 231, 538 S.E.2d at 915, and the Court pointed out that fibromyalgia is a controversial medical condition. *Id.* at 232-33, 538 S.E.2d at 916. Moreover, the plaintiff's expert on causation acknowledged that he knew of several other potential causes of the plaintiff's fibromyalgia, but did not pursue any testing to determine whether they were the causes of the plaintiff's fibromyalgia. *Id.* at 231-32, 538 S.E.2d at 915-16. Unlike fibromyalgia, which was at issue in *Young*, lymphedema does not appear to be a controversial medical condition. Defendants' expert, Dr. Paschal, testified that Plaintiff likely suffers from lymphedema. Dr. Paschal simply testified that Plaintiff's accident at work did not aggravate her lymphedema. Also, unlike *Young*, no other potential causes for the aggravation of Plaintiff's preexisting, but unsymptomatic lymphedema were identified in the present case. For the reasons stated above, we affirm the Commission on this issue and overrule the assignments of error grouped under this argument.

Defendants have failed to set forth argument pertaining to their remaining assignments of error, and we therefore deem them abandoned. *See* N.C.R. App. P. 28(b)(6).

**VOGLER v. BRANCH ERECTIONS CO.**

[181 N.C. App. 457 (2007)]

Affirmed.

Judges WYNN and McCULLOUGH concur.