An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-932

NORTH CAROLINA COURT OF APPEALS

Filed: 15 April 2014

MARY B. BENTLEY, Employee,
        Plaintiff,

        v.                              North Carolina
                                        Industrial Commission
                                        I.C. No. 609188

REVLON, INC., Employer, and CNA
INSURANCE COMPANY, Carrier,
Defendants.

MARY B. BENTLEY, Employee,
Plaintiff

        v.                              North Carolina
                                        Industrial Commission
                                        I.C. No. X22096

REVLON, INC., Employer, and ESIS
INSURANCE COMPANY, Carrier,
        Defendants.


        Appeal by Plaintiff from opinion and award entered 13 March 2013 by the North Carolina Industrial Commission.  Heard in the Court of Appeals 23 January 2014.


        *Lennon, Camak & Bertics, PLLC, by Michael W. Bertics and George W. Lennon, for Plaintiff.*

        *Teague Campbell Dennis & Gorham, L.L.P., by Carla M. Cobb and Heather T. Baker, for Defendants.*


        DILLON, Judge.

Mary B. Bentley (Plaintiff) appeals from an opinion and award of the North Carolina Industrial Commission (Full Commission or Commission) (1) denying her claim for total disability benefits pertaining to a compensable injury by accident that she sustained on 28 December 1995 (1995 injury) while working within the scope of her employment with Defendant Revlon, Inc. (Revlon); and (2) denying her subsequent claim that she developed an occupational disease as a result of performing her various job duties during her career at Revlon. For the following reasons, we affirm.

## I. Factual & Procedural Background

The evidence presented before the Commission tended to show the following: Plaintiff was employed by Revlon, or its corporate predecessors, from 1983 to 2011. Plaintiff was initially hired as an Inventory Technician to perform assembly work.

From 1995 to 1999, Plaintiff worked as a Group Packaging Leader. On 28 December 1995, Plaintiff sustained serious injury to her head, neck, right shoulder, and arm, when she was struck in the face multiple times by an air hose. Plaintiff sought treatment from several doctors following the 1995 injury,

including Dr. Robert Price, who, in 2000, noted that Plaintiff had also developed mild carpel tunnel syndrome.

In an opinion and award entered 17 March 2003, the Commission ordered that Revlon pay all medical compensation necessitated by the 1995 injury. The 2003 opinion and award expressly left open the "issue of what, if any, permanent partial disability compensation shall be payable to plaintiff . . . until such time as plaintiff reaches maximum medical improvement."

From 1999 to 2007, Plaintiff worked as a Packaging Services Clerk, which generally required her to use both hands to package daily work orders and to perform data entry, though she was assigned certain work restrictions by Dr. Daphne Cates at Vance Family Medicine, who was treating Plaintiff for migraine headaches, chronic sinusitis, and neck pain associated with her 1995 injury.

In January 2007, Plaintiff was promoted to the position of Inventory Technician II, where she worked until she left her employment with Revlon in 2011. Revlon modified the job duties ordinarily associated with the Inventory Technician II position to accommodate Plaintiff's condition and work restrictions. In this new position, Plaintiff performed tasks such as keying in

data, putting together work folders, and delivering the work folders to the manufacturing floor.

On 1 December 2010, Plaintiff presented for treatment at Raleigh Orthopaedic Clinic, where she was evaluated by a hand specialist, Dr. Harrison G. Tuttle. Plaintiff reported to Dr. Tuttle that she had been experiencing increasing pain throughout her right upper extremity over the course of the past year and that she believed that her pain was "directly associated with work." At that time, Dr. Tuttle completed a "Repetitive Motion Medical Questionnaire" in which he indicated that Plaintiff's job duties placed her at an increased risk of developing, and caused or significantly contributed to, Plaintiff's repetitive motion related injuries, namely, tenosynovitis, tendonitis, and carpal tunnel syndrome on her right side.

On 6 January 2011, Plaintiff filed an occupational disease claim with the Commission, citing upper extremity conditions caused by the repetitive nature of her job duties. Revlon thereafter filed a Form 61 denying Plaintiff's claim, contending that Plaintiff had "not sustain[ed] an occupational disease as [defined] by the NC Worker's Compensation Act" and that Plaintiff's "job did not cause and/or place her at an increased risked to develop her [alleged] conditions."

Plaintiff worked intermittently at Revlon following her December 2010 appointment with Dr. Tuttle and had stopped working altogether by March 2011 due to her physical condition.

Plaintiff's claim for disability compensation relating to the 1995 injury and her separate occupational disease claim were consolidated and scheduled for hearing before Deputy Commissioner George R. Hall, III, on 3 November 2011. On 28 October 2011, counsel for Revlon provided Plaintiff's counsel with a video of an individual performing the job duties required of an Inventory Technician II, the position in which Plaintiff held from 2007-2011, along with a written job description for that position. Both the video and the written job analysis were compiled by Gina Vieceli, a vocational rehabilitation specialist.

Plaintiff requested permission to introduce her own video evidence, depicting the job duties associated with the positions she had held at Revlon prior to 2007 when she assumed the Inventory Technician II position. The Deputy Commissioner indicated that he would rule on Plaintiff's request at a later date, should Plaintiff still wish to present countering evidence upon reviewing Revlon's video and job analysis.

Following the hearing, the Deputy Commissioner informed the parties that the record would remain open until 3 February 2012 "to obtain . . . the medical and lay evidence necessary to complete the record." Plaintiff deposed Dr. Tuttle, who testified that he had diagnosed Plaintiff with tenosynovitis, dorsal wrist tendinitis, and carpel tunnel and that, in his opinion, Plaintiff's work at Revlon caused these maladies. Plaintiff also deposed Dr. Cates, who opined that Plaintiff was more likely than not permanently and totally disabled due to the combined effect of her hand and arm conditions with the chronic headaches, sinusitis, and neck pain resulting from the 1995 injury and that Plaintiff could no longer perform her job.

Defendant deposed Ms. Vieceli and Dr. George Edwards, an orthopedic surgeon who specializes in hand and upper extremity surgery, who testified that, in his opinion, there was no evidence of any "strenuous or repetitive motions [associated with the Inventory Technician II position, which Plaintiff held beginning in 2007] that would be expected to cause" Plaintiff's upper extremity conditions.

On 9 February 2012 – six days after the deadline imposed by the Deputy Commission to present evidence – Plaintiff moved to present video evidence of her job duties for the positions she

held at Revlon prior to 2007, to which Revlon objected. The Deputy Commissioner denied Plaintiff's motion.

On 23 July 2012, the Deputy Commissioner entered an opinion and award in Plaintiff's favor on both her claims, determining that Plaintiff's upper extremity conditions constituted compensable occupational diseases and that the evidence established that Plaintiff had been "totally disabled since March 23, 2011 and that this disability [was] related to both her 1995 and 2010 workers' compensation claims."

Revlon appealed to the Full Commission, and Plaintiff's claims came on for hearing on 29 November 2012. On 12 December 2012, the Commission requested that Revlon submit a proposed opinion and award. In the wake of this request, Plaintiff contacted the Commission and requested that "if the Commission [was] not satisfied with the amount of evidence regarding the nature of [her] job duties, . . . the record be reopened to allow the videotaping of all of the jobs [she] performed for [Revlon] . . . ."

On 13 March 2013, the Commission entered an opinion and award – with one member dissenting without written opinion – reversing the Deputy Commissioner's decision. In its ruling, the Full Commission (1) denied Plaintiff's request to present

videotape evidence depicting her job duties prior to 2007; (2) denied Plaintiff's request for additional temporary partial or temporary total disability benefits relating to her 1995 injury; (3) awarded Plaintiff medical benefits pertaining to her 1995 injury to the extent of her permanent partial impairment ratings, a matter that had been left open for determination by the Commission's 2003 opinion and award; and (4) denied Plaintiff's occupational disease claim, concluding that Plaintiff had "failed to establish that she suffers from a compensable occupational disease within the meaning of N.C. Gen. Stat. § 97-53." From this opinion and award, Plaintiff appeals.

## II. Analysis

Our review of the Commission's opinion and award is generally limited to a determination of whether competence evidence supports the Commission's findings of fact and whether such findings are sufficient to support the Commission's conclusions of law. *Legette v. Scotland Mem'l Hosp.*, 181 N.C. App. 437, 442, 640 S.E.2d 744, 748 (2007). Findings supported by competent evidence are binding on appeal, "even if the evidence might also support contrary findings. The Commission's conclusions of law are reviewable *de novo*." *Id.* at 442-43, 640 S.E.2d at 748 (citations omitted).

In the present case, Plaintiff appeals from the Commission's opinion and award denying her occupational disease claim and denying her claim for total disability benefits pertaining to her 1995 injury. We address each claim separately below.

A. Occupational Disease Claim

Plaintiff first argues that the Commission erred in denying her occupational disease claim. We disagree.

A claimant seeking relief under the Workers' Compensation Act bears "the burden of proving each element of compensability[.]" *Holley v. ACTS*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). An individual seeking benefits for an occupational disease must prove, *inter alia*, that there exists "a causal relationship between the disease and the employment." *Hansel v. Sherman Textiles*, 304 N.C. 44, 52, 283 S.E.2d 101, 105-06 (1981).

Here, the Commission denied Plaintiff's occupational disease claim, reasoning that Plaintiff had failed to present competent evidence on the issue of causation. Specifically, the Commission concluded that "the exact nature and probable genesis" of Plaintiff's condition "involved complicated medical questions" such that "only an expert can give competent opinion

evidence as to the cause." *See Click v. Freight Carriers*, 300 N.C. 164, 265 S.E.2d 389 (1980) (holding that evidence in the form of expert testimony is required to meet an employee's burden of proof where the cause of the employee's condition involves complex medical questions "far removed from the ordinary experience and knowledge of laymen"). The Commission further found that the expert opinion concerning this issue provided by Plaintiff's expert, Dr. Tuttle, was speculative and inconsistent" and, therefore, did "not constitute sufficient medical evidence to satisfy Plaintiff's burden of proof [regarding causation]." *See Young v. Hickory Bus. Furn.*, 353 N.C. 227, 538 S.E.2d 912 (2000) (holding that expert opinion based on speculation and conjecture is "not sufficiently reliable to qualify as competent evidence on issues of medical causation"). We believe that these conclusions – that Plaintiff failed to meet her burden of presenting competent evidence to support an essential element of her claim, namely causation – supports the Commission's decision to deny her occupational disease claim.

Further, we believe that the Commission made sufficient findings to support its conclusions. Specifically, the Commission found as follows:

27.   Dr. Tuttle admitted at his deposition that he could not state how repetitive Plaintiff's jobs were and that he could not remember if he ever knew how repetitive her jobs were.  Dr. Tuttle also admitted that his opinions "were based on [Plaintiff's] descriptions of her job to me" and that he did not recall specifically what Plaintiff had told him about her jobs as it was never documented in his notes. . . .

28.   Based on the preponderance of the evidence of record, the Full Commission finds that Dr. Tuttle's opinions pertaining to "increased risk" and causation were not based on a sufficient understanding of the specific exact duties required in Plaintiff's various positions with employer and were not based on a sufficient understanding of the frequency in which those duties were performed.

The Commission determined, essentially, that Dr. Tuttle had expressed an opinion that the repetitive nature of Plaintiff's job duties had been a cause of her upper extremity conditions, but that Dr. Tuttle could not recall precisely what Plaintiff's job duties were or the repetitiveness with which Plaintiff had performed them.

Finally, we believe there was competent evidence in the record to support the Commission's findings concerning Dr. Tuttle's opinion, specifically in Dr. Tuttle's deposition testimony.  Plaintiff argues that during his deposition, Dr. Tuttle testified that "he spoke at length to [Plaintiff] about

her work"; that he had been provided with descriptions of the job duties for the various positions that Plaintiff had held; that "both the weight involved and the repetitive nature of the upper extremities activities contribute[d] to the development of [Plaintiff's] medical conditions"; and that it was his opinion that, "to a reasonable degree of medical probability, [Plaintiff's job duties] were a substantial contributing factor in the onset of her [occupational disease.]" Defendants, however, point to the following portions of Dr. Tuttle's testimony on cross-examination, in which Dr. Tuttle indicates his inability to recall Plaintiff's job duties or whether Plaintiff had ever informed him of the repetition with which she had performed those duties:

> Q: When you completed [the Repetitive motion medical questionnaire in] December 2010, did you even know what [Plaintiff's] job duties were?
>
> [Dr. Tuttle]: . . . [S]he described her work duties. I don't remember if she described it comprehensively, but she went over them with me.
>
> . . . .
>
> Q.: . . . [W]ould that change your opinions about whether or not her job placed her at an increased risk of developing . . . ?
>
> [Dr. Tuttle]: It just depends on the amount of repetition that she actually had to do.

. . . .

Q: But you don't know exactly how often or how repetitive her job duties were?

[Dr. Tuttle]: At this particular second I can't tell you.

Q: Have you ever known?

[Dr. Tuttle]: I don't remember. She may have gone over that with me.

. . . .

Q: And you don't know how many times she was doing particular functions; is that correct?

[Dr. Tuttle]: At this point, I don't. . . . [A]t this point I don't remember the details.

. . . .

Q: What did she tell you about her job?

[Dr. Tuttle]: I don't remember.

Q: Okay. Was it ever documented in your notes?

[Dr. Tuttle]: Doesn't look like it.

While we recognize that the record reveals evidence indicating that Dr. Tuttle may have had some understanding of Plaintiff's job duties, and the repetitive nature with which she had performed those duties, the foregoing testimony constitutes

evidence in support of the Commission's findings concerning Dr. Tuttle's lack of factual basis for his opinion.

Plaintiff advances two arguments to support her contention that the Commission erred in decision to deny her occupational disease claim. Plaintiff first argues that the Commission "abused its discretion by simultaneously finding Plaintiff did not present enough evidence of her job duties while also denying her motion to videotape her job duties." Second, Plaintiff argues that the Commission erred by not making findings "about the corroborating evidence in this case, including both Revlon's job descriptions of plaintiff's jobs in the 1980's and 1990's and the testimony of [a lay witness who gave fact testimony regarding Plaintiff's job duties]." However, even assuming *arguendo*, that Plaintiff is correct in her arguments, we hold that the Commission's failure to consider Plaintiff's proposed additional evidence – which, Plaintiff avers, would have provided the Commission's with a better understanding of her job duties and the repetitive nature thereof – did not constitute reversible error. Specifically, the Commission properly determined that, due to the complicated medical questions involved, Plaintiff was required to present *expert testimony* in order to meet her burden of proof with respect to the element of

causation. In other words, the Commission's decision to deny Plaintiff's claim did not rest upon any failure by the Commission to understand the repetitive nature of Plaintiff's job duties, but rather upon Plaintiff's failure to present medical testimony *from an expert witness* who demonstrated an understanding of Plaintiff's job duties sufficient to form a credible opinion concerning the plausibility that such duties caused Plaintiff's upper extremity conditions. Notably, Plaintiff does not contest the Commission's conclusion that Dr. Tuttle's testimony was speculative and, as such, insufficient to satisfy Plaintiff's burden in proving causation through the opinion of an expert. Accordingly, Plaintiff's arguments, even if correct, do not warrant reversal of the Commission's decision to deny her occupational disease claim.

B. 1995 Injury and Permanent Disability Benefits

Plaintiff next contends that the Commission erred in denying her claim for additional temporary partial or temporary total disability benefits pertaining to her 1995 injury. We disagree.

"Disability" for workers' compensation purposes "means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any

other employment." N.C. Gen. Stat. § 97-2(9) (2011). In the present case, Plaintiff seeks "additional" total disability benefits, in that the Commission has previously awarded Plaintiff – via its 2003 opinion and award – total disability benefits pertaining to the 1995 injury for certain time periods between October 1996 and May 1998. To prove the existence of a disability, Plaintiff was required to demonstrate each of the following:

> (1) that [she] was incapable after [her] injury of earning the same wages [she] had earned before [her] injury in the same employment, (2) that [she] was incapable after [her] injury of earning the same wages [she] had earned before [her] injury in any other employment, and (3) that [her] incapacity to earn was caused by [her] injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). Further, a claimant such as Plaintiff may carry her burden with respect to the foregoing elements by introducing any the following types of evidence before the Commission:

> (1) . . . medical evidence that [she] is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) . . . evidence that [she] is capable of some work, but that [she] has, after a reasonable effort on [her] part, been unsuccessful in [her] effort to obtain employment; (3) . . . evidence that [she] is capable of some work but that it would be futile because of preexisting conditions, i.e., age,

> inexperience, lack of education, to seek other employment; or (4) . . . evidence that [she] has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citations omitted).

We conclude that the competent record evidence supports the Commission's findings, which, in turn, support the Commission's conclusion that Plaintiff failed to demonstrate her entitlement to total disability benefits. In its 2003 opinion and award, the Commission determined that Plaintiff was temporarily and totally disabled for several periods spanning from 1 October 1996 through 7 May 1998. The Commission's findings in the present case indicate that, following May 1998, Plaintiff worked for roughly twelve years without incident prior to seeking treatment from Dr. Tuttle in December 2010 and, moreover, that such treatment pertained to Plaintiff's alleged occupational disease. These findings support the Commission's grounds for denying Plaintiff's claim for total disability benefits, namely, that any total disability for purposes of the present case was a product of Plaintiff's upper extremity conditions – with respect to which, as we have held, *supra*, Plaintiff failed to meet her burden in proving the existence of an occupational disease – and

not a product of her 1995 injury.

Plaintiff contends that the Commission incorrectly employed a heightened standard in denying her total disability compensation for her 1995 injury, specifically, that the Commission required her to prove that her 1995 injury *solely caused*, rather than merely *contributed to*, her disability. Plaintiff focuses on the following portion of the Commission's conclusion of law 5 as the source of this alleged error:

> Plaintiff has never been medically excused from work *solely as a result of her compensable injury by accident on December 28, 1995*[1] and has remained successfully employed with [Revlon] until she was no longer able to work due to her non-compensable upper extremity conditions. The Full Commission finds that Plaintiff has failed to present evidence of disability related to her compensable injury by accident of December 28, 1995 under any of the accepted Russell criteria; therefore, Plaintiff has not established disability as a result of her compensable injury by accident on December 28, 1995 and is not entitled to payment of indemnity compensation for total disability.

---

[1] We note that, as previously stated, Plaintiff "was temporarily and totally disabled" during several time periods between 1 October 1996 and 7 May 1998 and thus it would appear that Plaintiff did miss work due to the 1995 injury. Because the Commission has already awarded Plaintiff compensation for those periods of disability in its 2003 opinion and award, however, we construe the Commission's statement in conclusion of law 5 to mean that Plaintiff had not been excused from work *since the 2003 award* solely as result of the 1995 injury.

(Emphasis added). Plaintiff's contention is unpersuasive. We disagree with Plaintiff's characterization of conclusion of law 5, which we believe is more appropriately interpreted not as imposing an erroneous standard, but rather as reinforcing the Commission's finding that Plaintiff had not missed any work since May 1998 due to her 1995 injury, but rather that that any work missed by Plaintiff after May 1998 was a result of Plaintiff's upper extremity conditions. As stated above, the competent evidence of record supports the Commission's conclusion in this respect. Plaintiff's contention on this issue is accordingly overruled.

## III. Conclusion

For the foregoing reasons, we affirm the Commission's 13 March 2013 opinion and award.

AFFIRMED.

Judges STROUD and HUNTER, JR. concur.

Report per Rule 30(e).